**In re GENERAL OFFICE FURNITURE WHOLESALERS, INC., Debtor.**

**GENERAL OFFICE FURNITURE WHOLESALERS, INC., Plaintiff,**

v.

**GLENN SMITH ASSOCIATES, INC., Defendant.**

**Bankruptcy No. 82–00457–A.**
**Adv. No. 82–0431–A.**

United States Bankruptcy Court, E.D. Virginia.

Feb. 29, 1984.

Richard J. Stahl, Annandale, Va., Trustee in Bankruptcy.

Merrill Cohen, Bethesda, Md., for trustee.

Gerald M. O'Donnell, Alexandria, Va., local counsel for Trustee.

Steven H. Dorne, Springfield, Va., for defendant.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This matter comes before the Court upon the debtor's filing of a Complaint to Recover Preferential Payments in the amount of $2,850.00. Debtor filed the complaint on November 17, 1982, as a debtor-in-possession while proceeding under Chapter 11 of the Bankruptcy Reform Act of 1978 ("the Bankruptcy Code"). Upon conversion of the case to a case under Chapter 7 of the Bankruptcy Code, the Trustee in Bankruptcy has pursued the debtor's claim of preferential payment. The issue before this Court is whether the payment was made to satisfy an already existing obligation or was made either as a contemporaneous exchange for new value or on behalf of a debt incurred in the ordinary course of business.

An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the debtor, General Office Furniture Wholesalers, Inc. ("GOFW"), on April 8, 1982. The Court entered an Order for Relief *nunc pro tunc* April 21, 1982, and granted GOFW's motion to convert the case to a case under Chapter 11 of the Bankruptcy Code. On February 15, 1983, upon debtor's motion, the Court reconverted this case to a case under Chapter 7 of the Bankruptcy Code.

GOFW was a furniture, carpeting and draperies retailer. The defendant in this case, Glenn Smith Associates, Inc. ("GSA"), sold furniture wholesale to GOFW. Evi-

dence was adduced at trial which indicated that GSA was a manufacturers' representative for several furniture manufacturers. One manufacturer specifically identified was PFI, Inc. ("PFI"), for whom GSA served as representative in the Middle Atlantic state region.

Defendant's evidence indicates that GSA and GOFW had an open account payment arrangement. GSA would ship furniture to GOFW upon debtor's order, billing GOFW. Generally, GOFW would send a check to GSA within sixty days, paying for all or some of the billings within the period. In this manner, GOFW would pay for as few as one invoice or as many as five invoices at any one time. On January 29, 1982 and on February 5, 1982, GOFW made payments to GSA by check in the amounts of $4,908.00 and $639.00, respectively.

Trustee maintains that the payment of the $5,547.00 to GSA in January and February 1982 was preferential and may be avoided as such under 11 U.S.C. § 547(b) of the Bankruptcy Code [1]. For a preference to be avoided under 11 U.S.C. § 547(b), all of five criteria must be shown. In re Kelley, 3 B.R. 651, 653 (Bkrtcy.E.D.Tenn.1980); see H.Rep. No. 95–595, 95th Cong., 1st Sess. 372 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 87 (1978), U.S.Code Cong. & Admin. News, p. 5787. The trustee has the burden of proving that the transfers are preferential. In re Saco Local Dev. Corp., 25 B.R. 876, 878 (Bkrtcy.D.Me.1982); 4 Collier on Bankruptcy, ¶ 547.55, at 547—160.17 (15th ed. 1983).

Evidence adduced at trial established that GOFW paid GSA two checks totaling $5,547.00 and that GSA was a creditor of the debtor. The Court must look to the date the debtor made the payments and to the dates the debtor incurred the obligations to determine whether the debts were antecedent. In re Kelley, 3 B.R. 651, 654–55 (Bkrtcy.E.D.Tenn.1980). The checks were dated January 29, 1982 and February 5, 1982. GSA credited the payments against GOFW's open account on February 3, 1982 and February 8, 1982, respectively.

The last invoice which GSA had marked paid was billed to GOFW on November 11, 1981. The seven invoices listing goods in the total amount of $4,908.00 toward which GSA applied the January check, in the amount of $4,908.00, were billed on November 11, 1981 (five invoices), November 13, 1981 (one invoice) and November 20, 1981 (one invoice). Although this January 1982 payment did not bring GOFW's account current, the payment did pay for all invoices billed before December 1, 1981. GSA credited the February 5, 1982 payment of $639.00 to the next two invoices on the ledger, the billing on which totalled $639.00. The billing dates for the invoices paid with the February 1982 check were December 1, 1981 and December 3, 1981.

A debt is incurred when the debtor has an ownership interest in the consideration to be received. 4 Collier on Bankruptcy, ¶ 547.38, at 547–121 (15th ed. 1983); see Barash v. Public Finance Corp., 658 F.2d 504, 510 (7th Cir.1981). Such an ownership interest would exist when goods are identified for shipment. 4 Collier on Bankruptcy, ¶ 547.38, at 547–121 (15th ed. 1983). Thus, debts are incurred when services are rendered, not when an invoice is sent or even when a party is billed. The record does not indicate when GSA identified for shipment the office furniture to be sent to GOFW. Clearly, however, a period of fifty days

---

1. Section 547(b) of Title 11 of the United States Code provides in pertinent part:

    (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made—
    (A) on or within 90 days before the date of the filing of the petition; . . .
    (5) that enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
    11 U.S.C. § 547(b).

passed between the date GOFW incurred the debts and the time of GOFW's payments even when the billing dates, the dates most favorable to the debtor, are used as the date GOFW incurred the debts. The Court has no doubt but that the debts were antecedent.

■ The third and fourth elements of 11 U.S.C. § 547(b) are also satisfied. The debtor made the payments within the ninety-day period preceding the filing of the bankruptcy petition. An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against GOFW on April 8, 1982. A conversion of a case from one chapter to another of the Bankruptcy Code does not change the date of the filing of the petition for relief. 11 U.S.C. § 348(a). The ninetieth day prior to April 8, 1982 is January 8, 1982. Therefore, the January 29, 1982 and February 5, 1982 payments fall within the requisite time period of 11 U.S.C. § 547(b)(4)(A). The requirement that GOFW made the transfer while insolvent was satisfied through the presumption set forth in 11 U.S.C. § 547(f). This section provides that the debtor is presumed insolvent during the ninety days preceding the filing of the petition for relief. 11 U.S.C. § 547(f). The defendant offered no evidence to rebut this presumption.

Plaintiff also satisfied the final element of an avoidable preference found in 11 U.S.C. § 547(b)(5). The trustee testified that creditors in this case would receive approximately 20–25 percent of their claims. Furthermore, the trustee indicated that allowing GSA to keep the payments would result in GSA receiving a larger percentage of its claim than it otherwise would in a liquidation proceeding.

■ The trustee having proved the elements of avoidable preferences, we now address the exceptions to avoidability contained in 11 U.S.C. § 547(c) claimed by defendant. In order for the payments to be excepted from avoidability under 11 U.S.C. § 547(c)(1), the parties must have intended at the outset of the transaction that there be a contemporaneous exchange and that there, in fact, be a "substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1)(B). Plaintiff's evidence has demonstrated that there was no contemporaneous exchange. Between the dates of exchange of consideration there exist time periods of sixty-four to seventy-nine days. Under the circumstances of this case, such transactions cannot be said to be contemporaneous.

■ Defendant also maintains that 11 U.S.C. § 547(c)(2) excepts the payments from avoidability[2]. Defendant has the burden of showing that all four elements of 11 U.S.C. § 547(c)(2) are satisfied for the payments to be excepted from avoidability as payments in the ordinary course of business. *In re McCormick,* 5 B.R. 726, 730 (Bkrtcy.N.D.Ohio 1980). If any of the four elements remain unsatisfied, the payment may be avoided by the trustee as being preferential. *In re Hersman,* 20 B.R. 569, 573–74 (Bkrtcy.N.D.Ohio 1982); *In re Gulf States Marine, Inc.,* 6 B.C.D. 79, 80–81 (W.D.La.1980). The evidence clearly and amply illustrates that the payments were not made within forty-five days of when the debts were incurred, failing to satisfy the second element of 11 U.S.C. § 547(c)(2). For that reason, it is unnecessary to discuss the remaining elements. *See In re Gulf States Marine, Inc.,* 6 B.C.D. 79, 80–81 (W.D.La.1980).

■ Additionally, defendant claims that it is entitled to recover under 11 U.S.C. § 547(c)(4) monies paid for the benefit of the debtor's estate. GSA contends that it

---

**2.** Section 547(c)(2) of title 11 of the United States Code provides in pertinent part:
(c) The trustee may not avoid under this section a transfer—. . .
(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms . . .

was acting as the agent of PFI in many of the sales of office furniture to GOFW, including sales to GOFW in October and November 1981, totaling $1,901.00. GSA maintains that the amount deducted by PFI from GSA's sales commissions to pay for the furniture resulted in a benefit to the debtor's estate.

After a careful review of the record, however, the Court finds that there is insufficient evidence to support defendant's claim that it transferred "new value" to GOFW in the amount of $1,091.00. Although defendant maintains that certain goods were sold by PFI to the debtor through GSA as agent, no real evidence was introduced to show any contractual relationship between PFI and the debtor. Defendant did introduce documentary evidence bearing the signature of one of the debtor's employees which showed that goods were received by GOFW. This evidence, however, does not show that GOFW owed money to PFI. Furthermore, the fact that PFI deducted commissions from defendant indicates to the Court that defendant was financially responsible to PFI, rather than showing that the debtor owed any money to the third party. A set-off will be granted, however, in the amount of $2,697.00 for shipments GSA made to GOFW after the preferential payments.

Accordingly, and for all of the foregoing reasons, the Court finds that the payments by GOFW on January 29, 1982 and February 5, 1982 were preferential payments and must be set aside under 11 U.S.C. § 547(b) with the limitation that the defendant, GSA, be allowed a set-off in the amount of $2,697.00 in accordance with 11 U.S.C. § 547(c)(4). Therefore, judgment is entered against the defendant in the amount of $2,850.00, plus costs.

An appropriate Order will enter.