**In re Alfred A. COCO a/k/a Al Coco, Debtor.**

**Jeffrey L. SAPIR, Trustee for Alfred A. Coco a/k/a Al Coco, Plaintiff,**

**v.**

**ELI HADDAD CORP. and Richard Meirowitz, Esq., Defendants.**

**Bankruptcy No. 82 B 11759 (TLB).
Adv. No. 84–6084A.**

United States Bankruptcy Court,
S.D. New York.

Nov. 21, 1986.

Jeffrey L. Sapir, Yonkers, N.Y., trustee.

Betty Owen Stinson, New York City, for debtor.

Richard Meirowitz, New York City, pro se and for Eli Haddad Corp.

## DECISION ON TRUSTEE'S ACTION TO RECOVER A PREFERENTIAL TRANSFER

TINA L. BROZMAN, Bankruptcy Judge.

This somewhat unusual preference action results from rental payments made by a tenant into an escrow account pursuant to order of the Civil Court of the City of New

York. The tenant is now a chapter 7 debtor, his previously filed chapter 13 case having been converted. He had deposited some $14,400.00 into escrow, only $3,600.00 of which was deposited during the 90–day preference period. Subsequently, a New York Civil Court judge awarded judgment in favor of the landlord for $9,900.00 of the escrowed funds. Notwithstanding the literal terms of the judgment, the escrow agent, the landlord's attorney, disbursed the entire fund to himself two months after the chapter 7 conversion in satisfaction of legal fees owed to him by his client.

The trustee has commenced this adversary proceeding against the landlord and the attorney seeking to recover the entire $14,400.00 as an avoidable preferential transfer.[1] The case was tried before this court on June 18, 1985, July 11, 1985 and September 4, 1985.

FACTS:

Pursuant to a lease dated October 18, 1978, Alfred Coco, the debtor, was a tenant in a building owned by Eli Haddad Corp. ("Haddad"). The term of the lease was 36 months beginning November 1, 1978 and ending October 30, 1981. Stipulated monthly rent was $900.00. Coco paid rent only through March 1981 although he continued to occupy the premises until August 1982 (despite the expiration of the lease on October 30, 1981). At trial, he explained that he refused to pay his rent when he discovered that the building had no Certificate of Occupancy.

On October 20, 1981, Haddad commenced a nonpayment summary proceeding against Coco in the Civil Court of the City of New York seeking to recover back rent. In connection with that proceeding, Civil Court Judge Elliot Wilk ordered that Coco deposit the monthly rent into escrow to be held by Richard Meirowitz, attorney for the landlord Haddad, pending a determination of the nonpayment proceeding. Payments were made to Meirowitz by Coco as follows.[2]

| Date Paid | Amount | Rent For |
|---|---|---|
| August 4, 1981 | $3,600.00 | April–July 1981 |
| August 18, 1981 | 900.00 | August 1981 |
| November 9, 1981 | 2,700.00 | September–November 1981 |
| December 9, 1981 | 900.00 | December 1981 |
| January 7, 1982 | 900.00 | January 1982 |
| February 4, 1982 | 900.00 | February 1982 |
| March 5, 1982 | 900.00 | March 1982 |
| June 3, 1982 | 1,800.00 | June 1982 |
| July 6, 1982 | 900.00 | July 1982 |

Coco's roommate contributed whatever he could afford each month. It was Coco alone, however, who was the tenant under the lease and against whom the state court proceeding was prosecuted.

The summary proceeding was tried before Judge Richard S. Lane who issued a decision awarding the landlord possession and $9,900.00, the original amount requested, which represented rent for the months of April 1981 through February 1982. Final judgment was entered on July 9, 1982. Although Coco filed a notice of appeal, he never perfected it.

Coco's attorney in the nonpayment action, Bradley Davis, then wrote to Meirowitz and authorized him to release $9,900.00 from the escrowed funds and instructed him to retain the balance pending final disposition by the court. (Def. Ex. E.). Meirowitz responded that Haddad was entitled to the entire $14,400.00 and that, until the issue was resolved, no funds would be disbursed. (Def. Ex. F.).

Coco filed a Chapter 13 petition on August 31, 1982. His case was converted on October 26, 1982 to one under chapter 7 of the Bankruptcy Code. On his bankruptcy schedules, he listed Haddad as an unsecured creditor in the amount of $20,000.00 for rent arrears, and Meirowitz as an unsecured creditor in the amount of $37,672.00 for unpaid legal fees. Haddad filed a proof of claim on September 30, 1982 in the

1. A prior preference action was dismissed without prejudice. The Trustee then commenced the present action. Both sides moved for summary judgment which was denied by Judge Edward J. Ryan on February 18, 1985. Upon his retirement, this case was reassigned.

2. Coco did not timely pay the April and May rent. After a court order was obtained directing the continued payment, he resumed. He did not, however, pay the August rent, notwithstanding a further order by Judge Wilk that it be paid.

amount of $58,085.28 for both the arrears and the attorneys' fees. That proof of claim indicated that $14,400.00 was being held in escrow by Meirowitz. After the bankruptcy was commenced Meirowitz released the funds to himself in satisfaction of legal fees owed to him.

## PARTIES' CONTENTIONS

As best as we can gather from his papers, the Trustee argues first that the entire $14,400.00 was a preferential transfer since the debtor had an equitable interest in the escrowed funds. He next argues that a transfer of $9,900.00 was effectuated on July 9, 1982 when the judgment was rendered and thus that that amount is a preference. Further, he asserts that the $3,600.00 paid into escrow during the preference period and pending a final determination of how the funds should be disbursed should be avoided as a preference. Alternatively he asserts that $4,500.00 was released by Meirowitz subsequent to bankruptcy and thus is recoverable under 11 U.S.C. § 549. This last theory was not pleaded by the Trustee but emerged in his post-trial submission.

The defendants counter that it was the deposits into escrow and not the subsequent judgment that constitute the relevant controlling transfers. Thus, the defendants argue that $10,800.00 transferred prior to the preference period cannot be recovered. With respect to the remaining $3,600.00, they argue that $1,800.00 of it (representing the rent for April and May, 1982) should have been paid into escrow pursuant to the state court's order during the pre-preference period and should therefore not be considered property of the estate. Alternatively, they argue that the monies contributed by Coco's roommate (which amounted to between $3,200.00 and $4,800.00) were not property of the estate so that, presumably, so much as he contributed of the remaining $1,800.00 cannot constitute a preference.

In addition to denying the preference elements, defendants' answer raised two affirmative defenses: payment in the ordinary course and laches.

Before turning to the applicable law, we note that the Trustee in applying the law apparently misperceives the facts. The testimony and documentary evidence leave no doubt that *all* of the funds were released by Meirowitz post-petition in December of 1982. There was no pre-petition release of the monies awarded by Judge Lane's judgment.[3]

## DISCUSSION

Maintenance of a successful preference action requires the Trustee to prove by a preponderance of evidence all the elements set forth in 11 U.S.C. § 547(b).[4] *Hassett v. Blue Cross and Blue Shield of Greater New York (In re O.P.M. Leasing Services, Inc.)*, 46 B.R. 661, 666 (Bankr.S.D.N.Y. 1985); *Young v. Scandore Paper Box Corp. (In re Lucasa International Ltd.)*, 13 B.R. 596 (Bankr.S.D.N.Y.1981). Recov-

---

**3.** The monies were apparently not released because of the dispute between the parties, the pendency of the appeal and the existence of a second order from Judge Wilk directing Coco to continue to pay rent into escrow until the matter was finally resolved.

**4.** (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor

   (1) to or for the benefit of a creditor;

   (2) for or an account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent;

   (4) made—

   (A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

   (i) was an insider; and

   (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer;

   (5) that enables such creditor to receive more than such creditor would receive if—

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Bankruptcy Amendments and Federal Judgeship Act of 1984 amended this section. That amendment, however, does not apply here because the case was commenced in 1982.

ery is allowed only if each and every element is met. *In re O.P.M. Leasing Services, Inc., supra; Barr v. National Aircraft Services, Inc. (In re Cosmopolitan Aviation Corp.), 34 B.R. 592, 597 (Bankr.E.D.N. Y.1983); Weill v. Tennessee Central Credit Union (In re Kelley), 3 B.R. 651, 653 (Bankr.E.D.Tenn.1980).*

## A. Preference Elements

### 1. Transfer of the Debtor's Property

In accordance with the civil court order, the funds at issue were placed into an account through a series of deposits over a period of about one year. The account was to be utilized to satisfy rent accruing to the landlord should the civil court find in his favor in the then pending landlord-tenant action. Deposits totalling $10,800.00 were made prior to the preference period and deposits totalling only $3,600.00 were made during the 90 day preference period. Judgment was rendered within the preference period.

Judge Wilk's Civil Court order characterizes the account as an escrow, see Plaintiff's Ex. 3, and both parties follow suit. *See, e.g.,* Defendant's Ex. F; Trustee's Findings of Fact and Conclusions of Law at 4. While the term escrow may not be technically correct, it is a term frequently used. *See Creel v. Birmingham Trust National Bank,* 383 F.Supp. 871, 875 (N.D. Ala.1975), *aff'd* 510 F.2d 1363 (1975); 30A C.J.S. Escrow § 3. Whatever this account may technically be labelled, we find persuasive the reasoning set forth in the preference cases dealing with the creation of escrow accounts. In the context of preferential transfers, the rights of the parties, particularly the extent of control they could exercise over the funds in the instant case, are closely akin to the rights of the parties to an escrow.

Section 547(e)(1)(B) of the Code defines "transfer" for the purpose of preference analysis. So far as relevant, it states:

For the purposes of this section

(B) a transfer of ... property ... is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

■ What we must decide, therefore, in order to determine when the transfer occurred is whether under New York law a judgment lien creditor of Coco could acquire an interest greater than that of the landlord by attachment of the escrow account. And under New York law, it is the general rule that unless the judgment debtor, as grantor, retains an interest in the property over and above the interest of the grantee, the escrow account cannot be reached by the debtor's judgment creditors. *See Hassett v. Blue Cross and Blue Shield of Greater New York (In re O.P.M. Leasing Services, Inc.),* 46 B.R. 661, 667 (Bankr. S.D.N.Y.1985) and the cases cited therein. Accordingly, the transfer should be found to have occurred when the monies were deposited into escrow.

Indeed, the escrow cases are uniform in holding that it is the debtor's *deposit* of funds into escrow and not the award of judgment or subsequent release of the funds that is the controlling transfer for preference purposes. *See O.P.M.,* 46 B.R. at 668; *Newcomb v. Farmers Home Administration (In re Newcomb),* 744 F.2d 621, 627 (8th Cir.1984); *Burch v. Bond Adjusters, Inc. (In re Pelc),* 34 B.R. 823 (Bankr.D.Or.1983). This is so because upon deposit the debtor reserves only a contingent right to those escrowed funds; a subsequent judgment or subsequent release of the monies does not deprive the estate of anything of value. *In re O.P.M. Leasing Services,* 46 B.R. at 668.

Although a judgment or the release of the funds may very well constitute a transfer under the broad definition set out at 11 U.S.C. § 101(48), it is not the type of transfer that can be avoided, for "[t]o be avoidable a transfer must deprive the debtor's estate of something of value which could otherwise be used to satisfy creditors." *Newcomb,* 744 F.2d at 626, citing 4 L. King, *Collier on Bankruptcy* ¶¶ 547.-08(2), .20, .21 (15th ed. 1984).

The facts in the instant case fit neatly in this analysis. The debtor clearly lost con-

trol over the funds when he deposited them in the court ordered account. Thus the judgment in the landlord's favor was a transfer of no moment for preference purposes.

Accordingly, only the $3,600.00 which was deposited within the preference period constitutes transfers possibly subject to avoidance under section 547.

### 2. *To or For the Benefit of A Creditor*

■ Having established that the debtor paid his monthly rent to the escrow agent for the benefit of the landlord, the Trustee has fulfilled his burden of proving this element of his action. That Meirowitz released the money to himself, properly or improperly, does not alter the fact that Coco deposited the money for the benefit of his landlord.

### 3. *For or On Account of An Antecedent Debt*

■ Were this the garden variety preference action seeking to recover rent paid to a landlord within the preference period, we would have no difficulty in holding that payments of current rent did not constitute preferences. Lease payment obligations arise when they become due and payable because of the lessee's possession, not when the lease is signed. *In re White River Corporation*, 799 F.2d 631, 3 Bankr. L.Rep. (CCH) ¶ 71, 462 (10th Cir.1986); *Cormack v. Zell (In re Mindy's Inc.)*, 17

B.R. 177 (Bankr.S.D. Ohio 1982); *Armstrong v. General Growth Development Corp. (In re Clothes, Inc.)*, 35 B.R. 489 (Bankr.D.N.D.1983); *cf. In re Iowa Premium Service Co., Inc.*, 695 F.2d 1109, 1111, n. 7 (8th Cir.1982); *Garland v. Nooney Co. (In re Garland)* 28 B.R. 87 (Bankr.E.D.Mo. 1983).

■ Historically, current rent payments were held to rest upon current consideration and therefore did not constitute preferences. *In re Barrett*, 6 Am.Bankr.Rep. 199 (S.D.N.Y.1901); *In re Lange*, 97 F. 196 (S.D.N.Y.1899); *In re Louis J. Bergdoll Motor Co.*, 225 F. 87 (E.D.Pa.1915). The tenor under the Code appears to be the same, *see* 4 L. King, *Collier on Bankruptcy* § 547.20 (15th ed. 1982), at least where the payments are timely made.[5] Here the payments at issue were all tardily made (6, 7, 34 and 64 days after the first of the month for which the rent was due) and thus were technically on account of antecedent indebtedness. This finding, however, does not automatically doom the landlord because of the availability of section 547(c)(1), which states:

(C) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

---

**5.** Rent payments made during the month in which they fall due are the epicenter of no small controversy. At least one court under prior law construed the payments as being for current consideration where the lease provided, as is usual, that rent is due in advance for the month. *See Zelman v. Esher (In re C.S. Mersick & Co.)*, 1 B.R. 599 (Bankr.D.Conn.1979). This Circuit, in *dicta*, has analogized the lessor's position to that of a secured creditor because of the lessor's ability to evict the tenant if arrears are unpaid, the court concluding, therefore, that payment of arrears would be unavoidable as a preference (assuming, of course, that the lease subsisted, which in our case it did not). *Bachner v. Robinson*, 107 F.2d 513, 515 (2d Cir.1939). Other courts, under prior and current law, have found rent payments to be made on account of antecedent indebtedness but, at least under current

law, have concluded that they are nonetheless insulated from the trustee's attack either because they were made as a substantially contemporaneous exchange for new value [11 U.S.C. § 547(c)(1)] or because they were made in the ordinary course of business [11 U.S.C. § 547(c)(2)]. *See Armstrong v. General Growth Development Corp. (In re Clothes, Inc.)*, 35 B.R. 489 (Bankr.D.N.D.1983). *Carmack v. Zell, (In re Mindy's Inc.)* 17 B.R. 177 (Bankr.S.D. Ohio 1982); *Gentry v. Bodan*, 347 F.Supp. 367, 375 (W.D.La.1972).

Inasmuch as the rent becomes due and payable on the first of the month and because the Code now provides explicit exceptions to avoidance which may embrace rent payments, we prefer the analysis which finds the debt incurred before the rent payment is made.

(B) in fact a substantially contemporaneous exchange.

We hold that the payments made on June 7, 1982 (for June rent) and July 6, 1982 (for July rent) were substantially contemporaneous exchanges for new value. The new value which is the grounding for our conclusion is the debtor's right to occupancy for that month. *See In re Mindy's Inc., supra; In re Clothes, Inc., supra.*

■ The payments made 34 and 64 days late are not, however, embraced by the statutory exception. First, there is no exchange for "new value", the month to which the rents were attributable having ended. Second, the payments were not "substantially contemporaneous." *See, e.g. General Office Furniture Wholesalers, Inc. v. Glenn Smith Associates Inc. (In re General Office Furniture Wholesalers, Inc.),* 37 B.R. 180 (Bankr.E.D.Va.1984) (64 to 79 days existing between dates of indebtedness and exchange of consideration considered to be not substantially contemporaneous); *Carter v. Pickens (In re Arctic Air Conditioning, Inc.),* 35 B.R. 107 (Bankr.E.D.Tenn.1983) (loan paid thirty days later not substantially contemporaneous).

4. *Made While The Debtor Was Insolvent*

■ Section 547(f) arms the debtor or trustee with a presumption of insolvency for the ninety days preceding the filing of the petition. Although the defendants have argued that they were without knowledge of the debtor's financial condition, "the effect of the presumption obliterates the necessity of knowledge on the part of the defendant(s) of the debtor's insolvency...." *Samuel Kunstler Textiles, Inc. (In re Fabric Buys of Jericho, Inc.),* 22 B.R. 1013, 1015 (Bankr.S.D.N.Y.1982). Even though the ultimate burden of persuasion remains on the party seeking to avoid the transfer, it is incumbent upon the transferee to come forward with some evidence to rebut the presumption. *Id.;*

*Young v. Scandore Paper Box Corp. (In re Lucasa International Ltd.),* 13 B.R. 596, 600 (Bankr.S.D.N.Y.1981); *Cohen v. Kerm (In re Kennesaw Mint),* 32 B.R. 799 (Bankr.N.D.Ga.1983).

■ The defendants here have submitted no evidence on the issue of insolvency. Accordingly, the Trustee is entitled to rest on the presumption.[6]

5. *On Or Within 90 Days Before the Date of Filing The Petition*

■ The debtor first filed a chapter 13 petition on August 31, 1982. Although the case was later converted to one under chapter 7, the conversion did not affect the relevant petition date for the purposes of section 547. 11 U.S.C. § 348(a). Thus, the preference period began June 3, 1982, ninety days prior to the chapter 13 filing. In view of this court's earlier determination that the relevant transfers occurred when the monies were placed into escrow, only the payments made on June 3, 1982, June 7, 1982 and July 6, 1982 fall within the preference period.

6. *Enabling Such Creditor To Receive More Than It Would Receive If the Case Were a Chapter 7 Case and The Transfer Had Not Been Made*

■ This preference element specifically requires that the transfer

enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Accordingly, the court must look to what the creditor actually received as compared to what creditors of the same class would receive in a chapter 7 liquidation. L. King, 4 *Collier on Bankruptcy* § 547.35 at 547–119 (15 ed. 1985). The burden of proof is on the trustee.

**6.** That notwithstanding, the Trustee introduced in evidence schedules of the debtor's assets and liabilities reflecting insolvency as defined in section 101(29) of the Code.

The transfers were made in *full* payment of the stipulated monthly rent on behalf of an unsecured creditor.[7] To prove that the defendants would have received less in a chapter 7 liquidation, the Trustee offered in evidence, without objection, the debtor's schedules of assets and liabilities.[8] The schedules reflect assets of approximately $27,000.00 [9] and liabilities in excess of $66,000.00; thus it is overwhelmingly clear that the defendants fared far better than if they were to have received payment on their claims in a chapter 7 liquidation.

### B. *Other Affirmative Defenses*

#### 1. *Laches*

In their efforts to defeat this preference action, defendants assert the equitable defense of laches. That defense holds no sway with this court.

■■■ First, judicial application of laches is discretionary. *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). That notwithstanding, laches, which has been described as a *"quasi* statute of limitations," is inappropriate where applicable law prescribes a specific statute of limitations. *Thropp v. Bache Halsey Stuart Shields,*

7. Although Haddad's proof of claim suggests that he is secured by the escrowed monies, this position was not advocated at trial. In any event, defendants have shown us nothing indicating that the creation of the escrow or rendition of judgment gave rise to a lien, be it judicial, statutory or consensual.

8. These schedules are reflective of the debtor's financial picture at the time the petition was filed. That date has been held to be the operative date for determining what a creditor would receive in a liquidation. *See Erman v. Aronco (In re Formed Tubes, Inc.),* 41 B.R. 819 (Bankr.E.D.Mich.1984). Another case has held it is the anticipated actual distribution and not a hypothetical chapter 7 distribution on petition filing that is the gauge. *Neuger v. United States (In re Tenna Corporation),* 53 B.R. 493 (D.N.D. Ohio 1984). Resolution of this issue is not outcome determinative because in either situation, the unsecured creditors would not receive one hundred percent on their claims.

9. For purposes of determining assets, the debtor's exempt property is not included since this property is not available for distribution.

*Inc.,* 650 F.2d 817, 822 (6th Cir.1981); *Edmondson v. Mandrell (In re Mandrell),* 39 B.R. 455, 459 (Bankr.M.D.Tenn.1984); *J.E. Jennings Inc. v. William Carter Co. (In re J.E. Jennings, Inc.),* 46 B.R. 167, 172 (Bankr.E.D.Pa.1985). Section 546(a) of the Code sets out a statute of limitations for preference actions.[10] Moreover, defendants have not demonstrated how they were prejudiced by the Trustee's alleged delay in instituting the action. Accordingly, laches is no defense here.

#### 2. *Ordinary Course of Business*

■■■ The defendants also raise the defense embraced in section 547(c)(2) which renders unavoidable a transfer:

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

The debtor also lists a disputed asset of $5,000.00 for legal fees. Testimony at trial revealed this to be a claim for legal fees incurred in the landlord-tenant proceeding which the debtor ultimately lost. At best, this court views this asset as speculative. Accordingly we need not calculate it into the assets available to pay creditors. *In re Bichel Optical Laboratories, Inc.,* 299 F.Supp. 545, 547–48 (D.Minn.1969); *Brent Explorations, Inc. v. Karst Enterprises, Inc. (In re Brent Explorations, Inc.),* 31 B.R. 745, 751–52 (Bankr.D.Col.1983). In any event, inclusion of the $5,000.00 would effect no significant change in the ultimate distribution.

10. Section 546, entitled "limitations on avoiding powers" reads in relevant part as follows:

(a) An action or proceeding under section ... 547 ... of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702 ... of this title; and

(2) the time the case is closed or dismissed

There is no statute of limitations problem here as the action was commenced within the required two years.

(D) made according to ordinary business terms.

The burden is on the defendants to establish this defense. 11 U.S.C. § 547(g). *See Ewald Bros, Inc. v. Kraft, Inc. (In re Ewald Bros, Inc.)*, 45 B.R. 52 (Bankr.D. Minn.1984); *Rovzar v. Southern Maine Metal (In re Saco Local Development Corp.)*, 30 B.R. 867, 868 (Bankr.D.Me.1983). And all four elements of section 547(c)(2)(A)–(D) must be met. *In re Ewald Bros. Inc.*, 45 B.R. 52, 56 n. 10.

As the June 7 and July 6 transfers were determined by this court to be substantially contemporaneous exchanges for new value, the only remaining transfer subject to avoidance is the $1,800.00 transfer made on June 3, 1982 representing rent for April and May 1982. Because the April rent was due the first of that month, the April portion of the payment on June 3 clearly was made subsequent to "45 days after [the] debt was incurred." We turn therefore to the remainder of that payment.

 That the rental obligation was *incurred* in the ordinary course of the debtor's financial affairs is recognized by this court. We will not strain, however, to find a payment made to landlord's attorney to be held in a court-ordered escrow to be one made in the ordinary course of business according to ordinary business terms. Therefore, that portion of the June 3 payment representing May rent is avoidable.[11]

■ Based on all of the above, this court finds that only $900.00 of the

$1,800.00 payment made on June 3, 1982 is avoidable as a preference.[12]

SETTLE ORDER AND JUDGMENT ON NOTICE.

11. Our conclusion is not altered by the fact that Coco's roommate may have contributed a portion of the rent. The roommate may have owed money to Coco for the privilege of sharing the premises, but it was Coco who was obligated to the landlord. That Coco may have derived some of the money which he paid over to Meirowitz from the roommate does not mean that the funds paid to Meirowitz were not Coco's.

12. Although not raised before or during trial, the Trustee alternatively argues in his post trial brief that the release of $4,500.00 from the escrow was a post-petition transfer subject to avoidance under 11 U.S.C. § 549. (The fact is, however, that *all* of the funds were released post-petition). The argument must fail since

section 549 deals with post-petition transfers of *estate property*. At the time the funds left the escrow account, the debtor had no interest in them; whatever contingent right the debtor had had to the funds was lost when the Civil Court decided for the landlord and Coco abandoned his appeal. We do not agree that the landlord's entitlement was limited to the monies covered by the judgment. Judge Wilk's orders leave no doubt that all escrowed rent was to be delivered to the landlord if Coco's defense relating to the certificate of occupancy were defeated. Since the funds were not estate property at the time they were released, section 549 is inapplicable. *Carlson v. Farmers Home Administration (In re Newcomb)*, 744 F.2d 621, 627 (8th Cir.1984).