**In re UPSTAIRS GALLERY, INC., a California corporation, Debtor.**

**UPSTAIRS GALLERY, INC., a California corporation, Appellant,**

**v.**

**MACKLOWE WEST DEVELOPMENT CO., L.P., a New York partnership, Appellee.**

BAP No. CC–93–1433–JOP.

Bankruptcy No. LA 91–64068–VZ.

Adv. No. LA 92–03618–VZ.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 23, 1994.

Decided June 7, 1994.

Michael S. Kogan, Los Angeles, CA, for appellant.

Appellee did not participate.

Before JONES, OLLASON and PERRIS,[1] Bankruptcy Judges.

### *OPINION*

JONES, Bankruptcy Judge:

An art gallery entered into a five year lease agreement with a shopping center. Within ninety days of the art gallery's bankruptcy petition, the gallery and the shopping center entered into a termination of lease agreement with the gallery transferring about $38,000 to the shopping center. Postpetition, the art gallery, as debtor in possession, sought to avoid the $38,000 transfer as a preference pursuant to § 547(b)(2). The bankruptcy court found that the transfer was not an avoidable preference. We disagree and therefore reverse and remand.

### BACKGROUND

On April 29, 1988, Appellant/Debtor Upstairs Gallery, ("Upstairs") entered into a

---

1. Hon. Elizabeth L. Perris, Bankruptcy Judge for the District of Oregon, sitting by designation.

written five-year lease ("Lease") with the Hammerson Property Corporation ("Hammerson") in which Hammerson agreed to lease to Upstairs a retail location in Los Angeles, California. In June 1990, Hammerson assigned the lease to Appellee Macklowe West Development Company ("Macklowe").

On November 20, 1990, Upstairs and Macklowe entered into a Termination of Lease Agreement ("Agreement") under which both parties were released and discharged from further performance under the Lease and Upstairs paid Macklowe $38,532.36.

On February 8, 1991, Upstairs filed its Chapter 11 petition. On June 15, 1992, Upstairs filed an adversary complaint against Macklowe seeking to avoid and recover the $38,532.36 transfer as a preference, the transfer having occurred within 90 days of the bankruptcy filing.

In March 1993 the parties filed cross-motions for summary judgment, with Upstairs contending that the transfer was an avoidable preference and with Macklowe arguing that Upstairs had failed to show "antecedent debt" pursuant to 11 U.S.C. § 547(b)(2). After a hearing on April 1, 1993, the bankruptcy court held that the transfer was not on account of an antecedent debt and therefore not an avoidable preference. The bankruptcy court determined that the obligation of rent arises on the date it is due, and accordingly granted summary judgment for Macklowe. Upstairs appeals.

## ISSUE AND STANDARD OF REVIEW

■ For a transfer to be voided as a preference under § 547(b), all the requirements of that section must be satisfied. *In re Bob Grissett Golf Shoppes, Inc.*, 44 B.R. 156, 157 (Bankr.E.D.Va.1984) (citations omitted). Pursuant to § 547(g), the trustee has the burden of proving the five elements of § 547(b). Only the second element, whether the transfer was for or on account of an antecedent debt under subsection (b)(2), is at issue in the instant appeal.

■ Whether Upstairs' $38,532.36 transfer to Macklowe was on account of an

antecedent debt pursuant to § 547(b)(2) is an issue of law. We review issues of law *de novo. E.g., Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Vesey v. United States*, 626 F.2d 627 (9th Cir.1980).[2]

## DISCUSSION

■ The lease agreement between Upstairs and Macklowe gave rise to a debt. The lease agreement was entered into on April 29, 1988, and was antecedent to the later termination of the lease agreement, a settlement which occurred on November 20, 1990.

### 1. Definition of Debt

The term "antecedent debt" is not a term defined in the Bankruptcy Code. Of its component parts, the term "antecedent" is not defined; the term "debt" is defined in § 101(12) as "liability on a claim." Claim is defined in § 101(5) as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured....

11 U.S.C. § 101(5); *see also In re Daghighfekr*, 161 B.R. 685, 687 (9th Cir. BAP 1993).

■ Although the concept of provability was important under the former Bankruptcy Act, it was abandoned in the Bankruptcy Code. *In re Vasu Fabrics, Inc.*, 39 B.R. 513, 517 (Bankr.S.D.N.Y.1984).

The definition of "claim" was expanded and no longer are claims not fixed as to liability on the date of the filing precluded from participation. The result of the broad definition of "claim" and the abandonment of the concept of provability is that all legal

---

2. The granting of a motion for summary judgment is also reviewed *de novo. In re Sierra Steel, Inc.*, 96 B.R. 271, 273 (9th Cir. BAP 1989) (citing

*In re Marvin Properties, Inc.*, 854 F.2d 1183, 1185 (9th Cir.1988)).

obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case...."

*Id.* (citations omitted).

Pursuant to the lease agreement, Macklowe had a claim for monthly rental payments and Upstairs had a liability relating to that claim, or in other words, a debt.

### 2. *Incurrence of Debt*

■ Whether a debt is antecedent or current depends on when it was incurred. *In re Pan Trading Corp.,* 125 B.R. 869, 875 (Bankr.S.D.N.Y.1991) (citations omitted). A debt is incurred when the debtor first becomes legally obligated to pay. *In re CHG Int'l, Inc.,* 897 F.2d 1479, 1486 (9th Cir.1990).

In *Pan Trading,* the court held that a debtor generally becomes legally obligated under an installment contract on the date when the debtor originally undertook the obligation, not when each payment comes due. 125 B.R. at 875 (citing *CHG Int'l,* 897 F.2d at 1486). The *Pan Trading* court distinguished installment payments from payments under a rental agreement:

Whereas, in the "garden variety" rent case, lease payment obligations arise when they become due and payable, and not when the lease is signed, rental payments have generally been treated differently than periodic payments on other types of longer term debt.

*Pan Trading,* 125 B.R. at 876 (citing *In re Coco,* 67 B.R. 365, 370 (Bankr.S.D.N.Y.1986) (other citations omitted)).

The *Pan Trading* court reasoned that lease payment obligations arise when they become due and payable because of the contemporaneous manner in which money and services are exchanged and the facile divisibility of the separate rent payments. As a rule, payments apply specifically to the period in which they are paid. *Id.* at 876 (citing *In re C.S. Mersick & Co.,* 1 B.R. 599 (Bankr. D.Conn.1979)).

However, a careful reading of *Coco* shows that "[l]ease payment obligations arise when they become due and payable because of the lessee's possession.... *Coco,* 67 B.R. at 370. Current rent payments were held to rest upon current consideration, i.e., a grant of possession for the rent period, and therefore

did not constitute preferences. *Id.* at 370 (citations omitted). Rent payments tardily made were technically on account of antecedent indebtedness, and could be avoided. *Id.* at 370–371. In general, we agree with this analysis.

The instant facts can be distinguished from *Coco,* however. Here the $38,532.36 payment was not a *quid pro quo* for concurrent possession. On the contrary, Upstairs gave up future possession along with the payment. The only consideration for the payment was cancellation and settlement of the lease obligations or debt which arose on April 29, 1988. Since the payment extinguished a debt which arose on April 29, 1988, it is on account of an antecedent debt. The fact that that debt would have extended into the future but for the settlement agreement does not change the antecedent nature of the debt.

### 3. *Settlement of Antecedent Debt*

■ We hold that the debt in the instant case was incurred on April 29, 1988. A contract which is unambiguous in its terms on which the parties have agreed governs the relationship between the parties. *Bob Grissett,* 44 B.R. at 159 (citation omitted). A later compromise of the claim does not affect the time when the debt first arose. *Id.*

Although the substance of the termination agreement between Macklowe and Upstairs dealt with the termination of a lease agreement and cancellation of future liability thereunder, the agreement is analogous to a compromise or settlement agreement. *See In re Bioplasty, Inc.,* 155 B.R. 495, 499 (Bankr.D.Minn.1993).

As of April 29, 1988, Macklowe had a claim for monthly rental payments and Upstairs had a liability relating to that claim, or in other words, a debt. This debt arose before the November 20, 1990, termination of lease agreement, and was therefore chronologically antecedent. Consequently, a common sense reading of § 547(b)(2) would indicate that the $38,532.36 settlement of the lease liability made on November 20, 1990, was for or on account of an antecedent debt owed by the debtor before such transfer was made.

■ Section 547(c)(1) does not change this result. Merely because the parties settled and this settlement resulted in payment to the creditor, it does not follow that the settlement creates a new obligation for which the payment may be deemed outside the scope of § 547(b)(2) and as a "contemporaneous exchange for new value" under § 547(c)(1). *In re Lease–A–Fleet, Inc.*, 151 B.R. 341, 352 (Bankr.E.D.Pa.1993).[3] Creation and contemporaneous payment of a new debt in cancellation of an antecedent debt violates both the form and policy against preferences.

## CONCLUSION

We hold that the lease agreement between the parties gave rise to a liability on a claim, or in other words, a debt. Because the debt arose on April 29, 1988, it was antecedent to the later compromise and the bankruptcy court should have allowed the debtor in possession to avoid it. Accordingly, we reverse the bankruptcy court order granting summary judgment for Macklowe and remand for entry of summary judgment in favor of Upstairs.

---

3. *Lease–A–Fleet* distinguishes itself from *Lewis v. Diethorn*, 893 F.2d 648, 649 (3rd Cir.1990), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990). In *Lewis*, a home buyer sued a home builder for defective workmanship, filing a *lis pendens* on the title still held by the home builder. To remove the *lis pendens*, the home builder negotiated and settled with the home buyers for $15,500, and the buyers moved from the property. The *Lewis* court found that the settlement agreement was not on account of an antecedent debt and that it constituted a contemporaneous exchange for new value. The court based its finding on the fact that the property rose in value due to the removal of the *lis pendens* and therefore constituted new value. Such is not the instant case. Upstairs received nothing of value in exchange for the termination of lease agreement other than a release of liability. *See Lease–A–Fleet*, 151 B.R. at 352.