## In re EVERLOCK FASTENING SYSTEMS, INC., Debtor.

## EVERLOCK FASTENING SYSTEMS, INC., Plaintiff,

v.

## HEALTH ALLIANCE PLAN, Defendant.

Bankruptcy No. 90–19149–S.
Adv. No. 92–1064.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 4, 1994.

---

Daniella Saltz, Detroit, MI, for debtor/plaintiff.

Steven A. Roach, Debra L. Garelik, Detroit, MI, for defendant.

### OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WALTER SHAPERO, Bankruptcy Judge.

*Background and Facts*

On October 19, 1990, Everlock Fastening Systems, Inc. ("Everlock" or "Plaintiff") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On or within 90 days prior to October 19, 1990, Everlock made the following transfers by check to Health Alliance Plan ("HAP" or "Defendant"):

| Date Check(s) Honored | Amount of Check(s) | Subscriber Group Number(s) [1] | Month Covered by Payment |
| --- | --- | --- | --- |
| 7/23/90 | $33,698.77 | 11202, 11367, 11386 | July, 1990 |
| 8/8/90 | $27,561.98 | 11841, 11930 | August, 1990 |
| 8/9/90 | $27,232.30 | 11386, 11367 | " |
| 8/17/90 | $ 8,007.31 | 11773 | " |
| 8/20/90 | $ 5,875.37 | 11202–01 | " |
| 9/17/90 | $33,172.61 | 11367, 11386, 11202 | Sept., 1990 |
| 9/28/90 | $ 8,203.82 | 11773 | " |
| 10/1/90 | $25,592.00 | 11841, 11930 | " |
| 10/19/90 | $73,004.53 | 11367, 11386, 11773 11841, 11930, 11202 | Oct., 1990 |

The 10/19/90 payment was made by cashiers check.

On October 16, 1992, Everlock filed this adversary proceeding against HAP to avoid and recover preferential transfers in the amount of at least $122,977.74. Plaintiff and Defendant agree that § 547(c)(4) provides HAP with an affirmative defense to all but the $73,004.53 payment of October 19, 1990.

On or about March 1, 1985, Everlock and HAP entered into various Group Operating Agreements ("GOA's") whereby HAP, a licensed Health Maintenance Organization, provided healthcare services to certain Everlock employees and their dependents. The parties renewed the GOA's each year including the year preceding the filing date. The GOA's could be canceled by either HAP or Everlock following 30 days written notice to the other party. Neither HAP nor Everlock sought cancellation during the existence of the Group Operating Agreements.

The parties' agreement as to payment is set forth in ¶ 3 of the GOA: "The ... Remitting Agent agrees that all subscription rates paid by them as agent for or on behalf of the subscriber(s) are to be prepaid and are to be for at least a monthly period. HAP shall not make refunds nor retroactive credits of subscription rates." On the first day of each month, HAP provided to Everlock a month of employee healthcare services. Coverage was provided by HAP in one-month units. Everlock could neither pay for only part of a month nor receive a refund, rebate, or credit for all or part of a month (GOA ¶ 3) nor could coverage begin on any day other than the first day of the month. (GOA ¶ 5).

In 1989 and 1990, Everlock made 115 of 144 payments late. Despite the delinquent status of Everlock's account with HAP, HAP did not cancel Everlock's coverage. On October 19, 1990, Everlock delivered a cashiers' check to HAP in the amount of $73,004.53 for healthcare services.

Everlock moves for summary judgment against HAP in the amount of the indicated $73,004.53 plus interest, costs and attorneys' fees, on the basis that such payment was preferential and is avoidable by the Debtor, pursuant to 11 U.S.C. § 547(b), and recoverable by the estate pursuant to § 550(a). HAP

---

1. HAP insured eligible Everlock employees through six subscriber groups consisting of salaried and hourly employees at Everlock and its various divisions.

moves for summary judgment in this matter based on the new value and ordinary course of business exceptions to § 547(b) found in § 547(c)(2) and § 547(c)(1).

## Law and Discussion

■ Defendant does not dispute Plaintiff's assertion that the transfer of payments from Everlock to HAP were preferences as defined in § 547(b). The primary issues in this motion concern the applicability of the defenses found in § 547(c)(2) and § 547(c)(1).

HAP's first defense is based on 11 U.S.C. § 547(c)(2). Pursuant to § 547(c)(2), the trustee may not avoid a transfer to the extent that the transfer was: (1) a payment of a debt the debtor incurred in the ordinary course of business, (2) made in the ordinary course of business, and (3) made according to ordinary business terms.[2] As with all 11 U.S.C. § 547(c) defenses, the moving party (HAP) must shoulder the burden of proving that the preferential payments are not avoidable. 11 U.S.C. § 547(g).

■ Everlock argues only that HAP does not meet the second criterion. In making a determination whether a transaction is within the ordinary course of business exception under 547(c)(2)(B), courts examine the business practices unique to the particular parties under consideration. Relevant factors include the timing of the payment, the amount and manner in which the transaction was paid, and the circumstances under which the transfer was made. *In re Yurika Foods Corp.*, 888 F.2d 42, 45 (6th Cir.1989).

■ To determine whether a transaction was not in the ordinary course, courts look for any significant variation from past proven ordinary practices. *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 70–71 (3d Cir. 1989). Where a transfer did not result from "usual" payment practices, was in an unusual amount, and was untimely, a defendant fails to meet its burden under 547(c)(2). *In re Ullman*, 80 B.R. 101, 103 (Bankr.S.D.Ohio 1987). In this case, Everlock paid for all six groups with a cashier's check just hours before the bankruptcy. Only on October 19, 1990 did Everlock pay for all six groups on one day.[3] Only on October 19, 1990 did Everlock pay for all six groups with one check.[4] And, only on October 19, 1990 did Everlock pay for any of the groups with a cashiers check. During the usual course of business between Everlock and HAP, HAP was paid by ordinary checks drawn on Everlock checking accounts. Furthermore, Everlock paid HAP nineteen days late and HAP has made no showing that 19 days was an "ordinary" degree of tardiness in its business relations with Everlock. Indeed, the undisputed facts show that of the 198 payments made from January 1, 1988 to October 19, 1992, only 31 (fewer than 16%) were 19 or more days late. Therefore, by evaluating the totality of the circumstances, this Court finds that Everlock's payment to HAP was not in the ordinary course of business, and therefore, HAP cannot rely on § 547(c)(2) as an affirmative defense to Everlock's motion for recovery of the payment.

HAP's second defense is based on 11 U.S.C. § 547(c)(1). Pursuant to § 547(c)(1), HAP must prove: (1) HAP gave Everlock new value in exchange for each payment; (2) both Everlock and HAP intended each exchange to be contemporaneous; and (3) each exchange was in fact substantially contemporaneous.[5] *In re Lewellyn & Co., Inc.*, 929

---

**2.** 11 U.S.C. 547(c)(2) states:

(c) The Trustee may not avoid under this section a transfer—
(2) to the extent that such transfer was—
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms.

**3.** On any given payment day, HAP was paid premiums for only one, two, or three groups (except for June 18, 1990, when the premiums for four groups were received, in two different checks.)

**4.** Everlock often paid premiums for three groups with a single check and always paid for two groups with a single check.

**5.** 11 U.S.C. § 547(c)(1) states,

(c) The trustee may not avoid under this section a transfer—

F.2d 424, 428 (8th Cir.1991). HAP again sustains the burden of proof. 11 U.S.C. § 547(g).

Both parties agree that new value was exchanged for each payment thus fulfilling the first element of § 547(c)(1). Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment.

██ The second element of § 547(c)(1) requires that both Everlock and HAP intended each exchange to be contemporaneous. To determine the intent of the parties, the court needs to consider whether the agreement or the course of dealings between parties evidenced contemporaneous intent. *In re Lewellyn & Co., Inc.*, 929 F.2d 424, 428 (8th Cir.1991). *See also, In re Spada*, 903 F.2d 971, 975 (3d Cir.1990) *citing Matter of Prescott*, 805 F.2d 719 (7th Cir.1986). The Group Operating Agreement between Everlock and HAP unambiguously states that their premiums were to be paid on a prepaid basis. However, the inquiry into the parties' intent does not end with an analysis of the written agreement, but includes the consideration of the course of dealings between the parties. *Lewellyn*, 929 F.2d at 428 *citing In re Schmidt*, 26 B.R. 89, 91 (Bankr.D.Minn. 1982) ("both the agreement of the parties and their *course of dealing* suggests that they intended the transfer ..."); *In re Schmidt*, 26 B.R. 89, 91; *In re Clothes*, 35 B.R. 489, 492 (Bankr.N.D.1983), *on remand*, 45 B.R. 419 (Bankr.D.N.D.1984). Likewise, the Seventh Circuit Court in *Prescott*, did not reject the fact that the evidence could have shown that the parties departed from their original intention, i.e., through their course of dealings. *Prescott*, 805 F.2d at 728.

It is unrealistic to suggest that the intent of both Everlock and HAP could not change during the course of their relationship. To establish intent, courts have focused on whether there was a manifest desire by the parties that the exchanges contemporaneously granted money or money's worth in new goods, services, credit or property to the

debtor. *See, In re Spada*, 903 F.2d 971, 975 (3d Cir.1990), *citing Matter of Prescott*, 805 F.2d 719 (7th Cir.1986). Because there was an October 1, 1990 payment bringing current the monies Everlock owed to HAP for services provided prior to payment, it is clear that the October 19, 1990 payment was intended by both parties to cover fees for current services. Therefore, this Court concludes that the second element of the § 547(c)(1) defense was fulfilled because both Everlock and HAP intended the October 19, 1990 payment to be a contemporaneous exchange for healthcare services.

██ The third element of § 547(c)(1) requires that each exchange be substantially contemporaneous. This Court finds that the exchange of money payment for healthcare services was substantially contemporaneous because the payment for services occurred during the same month the services were provided.

In this case, the payment for healthcare services is similar to payment under a lease. Just as a landlord provides the premises throughout the entire month, HAP provided new value in the form of healthcare services throughout the month. In the context of leases, many courts have found that payments made in the same month of occupancy are substantially contemporaneous as long as they were paid during the month they fell due. *In re Coco*, 67 B.R. 365 (Bankr. S.D.N.Y.1986); *In re C.S. Mersick & Co.*, 1 B.R. 599 (Bankr.Conn.1979); *In re Mindy's Inc.*, 17 B.R. 177, 179 (Bankr.S.D.Ohio 1982).

One of the earliest cases to discuss the issue of payments pursuant to executory contract made during the month in which they fall due is *C.S. Mersick & Co.* In that case, the debtor leased a building under a 25–year lease. The lease required payments to be made by the first of each month. The debtor, however, made the payments in question beyond the first of the month, varying from the 8th day through the 30th day of the month. The trustee, under the old Bank-

(1) to the extent that such transfer was—
    (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

    (B) in fact a substantially contemporaneous exchange.

ruptcy Act, sought to set aside the payments as preferential transfers. The court rejected this attempt finding that a rental payment during the month of occupancy was for present consideration. *C.S. Mersick & Co.*, 1 B.R. at 602.

In the *Coco* case, the debtor leased an apartment in New York. During an eviction proceeding, the state court ordered him to make lease payments into escrow. In a subsequent Chapter 7 proceeding, the debtor made the payments 6, 7, 34, and 64 days after the first of the month for which the rent was due. The court held that § 547(c)(1) did not except the payments made 34 and 64 days late because the months to which the rents were attributable had ended. *Coco*, 67 B.R. at 371. There was no substantially contemporaneous exchange of new value for rent paid after the end of the month.

Everlock argues that the exchange was not contemporaneous because the payment HAP made to Everlock on October 19, 1990 was applied to Everlock's premium due October 1, 1990, and therefore, the payment qualifies as antecedent debt. This argument is unpersuasive because the payment on October 19, 1990 more closely resembles the lease situation raised by HAP in its argument than the typical credit transaction where one purchases goods or services now and pays later.

As in a leasehold situation, where the landlord provides the premises throughout the entire month, HAP provided new value throughout the month, and not just on the first of the month. Consequently, the transfers were in fact substantially contemporaneous exchanges for new value. Therefore, Everlock's payment to HAP was not preferential pursuant to § 547(c)(1).

### Conclusion

Because there are no issues of material fact, the parties are entitled to judgment as a matter of law. For the reasons stated above, this court GRANTS HAP's Motion for Summary Judgment.

HAP shall prepare and present an appropriate order.