In re Bernadine Kate
MITCHELL, Debtor.

Howard WATSON and Goldie A.
Watson, his wife, Plaintiffs,

v.

Bernadine Kate MITCHELL and Joseph
J. Bernstein, Trustee for Bernadine
Kate Mitchell, Defendants.

Bankruptcy No. 85–809.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 19, 1987.

Samuel J. Goldstein, Pittsburgh, Pa., for plaintiffs.

Joseph J. Bernstein, trustee, Neil Y. Siegel, Bernstein and Bernstein, P.C., Pittsburgh, Pa., for trustee.

David D. DeAngelis, Pittsburgh, Pa., for debtor/defendants.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is an action to Enforce an Installment Land Contract ("Contract") entered into by and between the Plaintiffs and Debtor six (6) years prior to the filing of Debtor's bankruptcy petition. The Plaintiffs, (hereinafter the "Watsons") whose daughter is currently in possession of the property, have never recorded the contract and same is now in default. The Trustee claims hypothetical bona fide purchaser status as to the property pursuant to § 544 of the Bankruptcy Code, thus giving him the right to avoid the transfer to the Watsons. The Watsons claim that they hold equitable title and that in an executory contract such as this, § 365(i) of the Code requires the Trustee to tender the deed to them. Based upon the pleadings, the testimony and this Court's own research, we find that the Trustee possessed constructive notice of the possession by someone other than the debtor, and therefore, cannot avoid the Contract pursuant to § 544.

The Watsons are in default on the Contract; however, pursuant to applicable Pennsylvania law, the Trustee must provide the Watsons with an opportunity to cure the default. If they do not cure in a timely fashion, the Trustee may consider the contract terminated and the equitable interest in the fee will be deemed merged with the legal title held by the Trustee.

## FACTS

Debtor, as seller, and the Watsons, as purchasers, entered into an Installment Land Contract on August 23, 1979. The total purchase price was $8,000.00. Defendants made a $3,000.00 down payment and agreed to make sixty (60) installment payments of $102.59 payable on the first of each month. The Contract was to begin on October 1, 1979 and expire September 30, 1984. Pursuant to the Contract, the Watsons were responsible for payment of all taxes, insurance, water and sewage during the life of the Contract. A payment book was created for each party to record payments and to indicate amounts attributed to principal and interest, along with a running balance due.

The Debtor never used her payment book; instead, she relied on the record kept in the Watsons' book and upon cash receipts issued periodically. During the first year of the Contract, payments were made in full and in a timely fashion. Sometime during the second year however, payments became incomplete and sporadic. While Debtor is unable to recall when said pattern began, she admits to accepting the incomplete payments when they were tendered. The Watsons contend that the payment book which was used by the parties to record the payments, and which shows that full and partial payments were made on the property up to and during the mid-

dle of 1985, had been given to Debtor. The Debtor disclaims any knowledge of same.

Debtor filed a voluntary Chapter 7 petition on April 5, 1985 and a trustee was appointed. On August 28, 1985, the Watsons filed this action to compel the Trustee to deliver a deed to them under the unrecorded Installment Land Contract pursuant to § 365(i) of the Bankruptcy Code. The Trustee claims that the outstanding balance is approximately $4,062.60, including $1,225.00 for principal and interest, $1726.00 for unpaid taxes, and $1,111.60 for unpaid water and sewage bills. The Watsons dispute liability on the taxes, water and sewage, claiming that they were not notified of same as required under the Contract. However, both parties agree that the outstanding balance due under the Contract is approximately $1,200.00.

## ANALYSIS

The Trustee claims that pursuant to § 544(a)(3), the property in question is part of the estate. That section states in pertinent part:

(a) the trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee ... the rights and powers of, or may avoid any transfer of property of the debtor ... that is voidable by—

(3) a bona fide purchaser of real property ... from the debtor, against whom applicable permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The Trustee asserts that as the Contract was not recorded, he is a bona fide purchaser without knowledge. He adduces therefrom, that as a perfected party, he has no duty to provide anyone with a notice of default—he claims clear title.

■ The Trustee neglects to differentiate between "notice" and "knowledge". Knowledge refers to actual notice or information as opposed to constructive notice. The statute provides for the scenario wherein the trustee, as a private individual,

has actual notice of a particular title defect. If he then became the appointed trustee, said actual knowledge would prevent him from performing his fiduciary duties. In anticipation of such a problem, Congress provided that such a person's actual, personal knowledge of a defect would not affect his function as a trustee.

On the other hand, a trustee is bound by any constructive notice he has. *See R.A. Beck Builder, Inc. v. Schmitt,* 66 B.R. 666 (Bankr.W.D.Pa.1986). The law in Pennsylvania provides that in order for a buyer to hold the status of a bona fide purchaser, he must take title to the property without notice, actual or constructive, of any claim to the property. *R.A. Beck Builder, supra; Long John Silvers, Inc. v. Fiore,* 255 Pa.Super. 183, 386 A.2d 569 (1978).

The question in the case at bar is not whether the Trustee had actual knowledge of the unrecorded Contract. Rather, the question is whether the Trustee had *constructive* notice that Debtor's title to the property might be flawed. The Watsons claim the Trustee had constructive notice in two (2) ways:

1) Defendant's daughter was in possession of the property; and

2) Defendants had tendered $140.00 toward payments of the Contract *after* the petition in bankruptcy was filed and the Trustee was appointed.

The law in Pennsylvania states:

"Clear and open possession of real property generally constitutes constructive notice to subsequent purchasers of the rights of the party in possession. Such possession ... obliges any prospective subsequent purchaser to inquire into the possessor's claimed interests, equitable or legal, in that property."

*R.A. Beck Builder, supra* at 671, quoting *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982); *Long John Silvers, Inc., supra.*

■ The Trustee had constructive notice. He had a duty to view the property, and by finding an individual other than the Debtor on said property, he had a duty to inquire. Such inquiry would have led to the knowledge that the party in possession claimed

equitable ownership in same. Therefore, the Trustee cannot be a bona fide purchaser and is not able to avail himself of the § 544 avoiding powers.

Because the Trustee's avoiding powers are not available to him, he holds the property as if he were the seller. As such, he must comply with the terms of the Installment Land Contract Law, 68 P.S. § 901 *et seq.*, and any other laws made part of the Contract itself. The Contract states that in the case of default in payment of any sums, principal or interest, the entire balance shall, at the option of the seller, become due and payable.

▪ The Trustee claims he has a legal right to immediately foreclose on the property, as the Watsons are in default. The Watsons, however, direct us to § 902(3) of the Installment Land Contract Act and the Contract's incorporation of Pennsylvania's "notice of intent to foreclose" provision, 41 P.S. § 403 (hereinafter "Act 6"), both of which entitle the buyer to written notice of default. Said notice must be provided by registered or certified mail at least thirty (30) days prior to termination, and included therein must be an opportunity to cure the default.

The specific agreement between Debtor and the Watsons states as follows:

THIS AGREEMENT IS SUBJECT TO ALL APPLICABLE PROVISIONS OF THE ACT OF JANUARY 30, 1974, P.L. (No. 6), INCLUDING DISCLOSURE REQUIREMENTS.

Section 403(c) of Act 6 outlines the requirements of the foreclosure notice and states that the following information must be provided both clearly and conspicuously:

1) the particular obligation or real estate security interest;

2) the nature of the defaulted claim;

3) the right of the debtor to cure the default as provided in § 404 of this Act and exactly what performance, including what sum of money, if any, must be tendered to cure the default;

4) the time within which the debtor must cure the default;

5) the method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

6) the right of the debtor, if any, to transfer the real estate to another person subject to the security interest, or to refinance the obligation and of the transferee's right, if any, to cure the default.

The Installment Land Contract Law of 1965, 68 P.S. § 901–911, states that the seller may terminate the Installment Land Contract as long as he provides written notice to the purchaser, either by registered or certified mail, and no action to remedy the default is taken by the purchaser. The seller's formal notice of intent to terminate must state:

1) that a default exists;

2) the specific amount of money needed to cure the default; and

3) the date by which the money must be tendered (the seller must allow at least 30 days from the date of receipt of notice by purchaser).

This is completely consistent with Act 6 and therefore, both laws apply to this particular Contract.

Based upon these statutory requirements and the Contract itself, the Court finds that the Trustee must notify the Watsons of the default and intent to foreclose and allow them an opportunity to cure. Provided the Watsons cure, the property will become theirs. If however, they fail to cure, then the contract will be deemed terminated and the equitable interest will merge with the legal title presently held by the Trustee.

An appropriate Order will be issued.