In re FORD CONCEPTS, INC. Debtor.

FORD CONCEPTS, INC., Plaintiff,

v.

Clifford JONES, Sally Ann Jones, American Rock & Stone Corp., Jones Septic Tank Co., Inc., Thomas Fogt and Krush Krete Aggregate, Inc., Defendants.

Bankruptcy No. 86 B 12453 (PBA).
Adv. No. 88–0134–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

April 15, 1988.

Squadron, Ellenoff, Plesent & Lehrer, New York City, Jeffrey H. Frank, North Palm Beach, Fla., for defendants Clifford Jones, Sally Ann Jones, American Rock & Stone Corp., Jones Septic Tank Co., Inc.

Denise M. Pappalardo, Kleinberg, Moroney, Masterson & Schacter, P.C., Milburn, N.J., for defendant Thomas Fogt.

Harlan L. Cohen, Fried, Spector, Scher & Feldman, New York City, for defendant Krush Krete Aggregate, Inc.

Jeffrey L. Solomon, Nachamie, Kirschner, Levine & Spizzi, P.C., New York City, for Ford Concepts, Inc.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

This adversary proceeding, which was then at issue, was transferred here March 4 from New York on defendants' motion. It was tried April 5.

Plaintiff, a Florida corporation, is a chapter 11 debtor-in-possession in a New York bankruptcy filed Christmas Eve, 1986. It seeks $100,000 in actual and punitive damages from defendants upon the ground that a truck and a concrete plant were sold, respectively, in June and August of 1987 by some of the defendants to other defendants.

It is alleged that the postpetition sale, which was without leave of the court, was in willful disregard of the pending bankruptcy. By a motion made at trial, plaintiff was permitted to amend to allege that the sale was a voidable preference.

At trial, plaintiff filed a written stipulation for the dismissal of the complaint as to the defendant, Fogt, the attorney who conducted the sales to the defendant, Krush Krete, on behalf of the remaining defendants.

At trial, plaintiff orally stipulated for dismissal also as to Krush Krete, an unrelated third party who purchased both items in good faith and for fair value, and Krush Krete withdrew its pending motion for sanctions (CP 20). The complaint is dismissed as to Krush Krete.

The defendants, American Rock & Stone and Jones Septic, are corporations owned and controlled by the defendant Clifford Jones and his wife. All are collectively referred to hereafter as "the Joneses".

At trial, also, the Joneses moved for dismissal on the ground that plaintiff had been dissolved by the Florida Secretary of State on November 16, 1987 under *Fla. Stat.* § 607.357(6), which denies dissolved corporations standing to maintain or defend litigation. The trial proceeded and this decision is based upon plaintiff's representation that the corporation was reinstated by the Secretary of State on the date of trial.

### The Relevant Facts

In December 1981, the Joneses sold the concrete plant to the debtor's predecessor and leased a site where the plant continued in operation until late 1985. The truck was purchased later by the debtor for use with the plant.

In November 1986, the debtor defaulted on the lease, and owed two month's rent, $1,500, when the petition was filed. By its terms, the lease expired December 31, 1986, one week after bankruptcy.

The Jones have never been scheduled as creditors in the New York bankruptcy, nor has either the truck or the concrete plant ever been scheduled in that bankruptcy as property of the debtor.

Both the truck and the plant remained unused and in inoperable but repairable condition on the leased property subsequent to suspension of the plant's operation in late 1985.

Between November 14, 1986 and May 19, 1987, the Jones' attorney wrote five letters to the debtor at its headquarters on Windsong Lane in Stuart, Florida, terminating the lease for nonpayment of rent and giving notice pursuant to Florida law that all equipment left on the premises, including specifically the plant and the truck, would be sold. (D's Ex B through F).

The truck was sold June 26, 1987 to the Joneses. The plant and the truck were sold later by the Joneses at public sale in August 1987 to an unrelated third party for, respectively, $55,000 and $21,000. It is not suggested, nor do I find, that the sale price was inadequate in either case. Both items, having been sold for value to a good

faith purchaser without notice of the pending bankruptcy, are beyond the reach of this court. 11 U.S.C. § 542(c).

The management of the debtor's affairs appears to have been entrusted to a resident of Stuart, Sheehan, first as a consultant for some months before bankruptcy, and subsequently as the debtor's executive vice president. He had been the principal of the debtor's predecessor when the plant and the business were purchased in May 1983 from the party to whom the Joneses had sold two years earlier. He prepared the debtor's bankruptcy schedules. He was responsible for the operation of the Stuart office of the debtor.

Though well aware of the plant, the truck, and the lease, Sheehan omitted them from the bankruptcy schedules, because (he tells us) until March 1987 he thought they were subject to liens and without equity. He has never requested or seen a lien search. He has offered no explanation for his failure to schedule the Joneses as creditors or the lease as an asset.

He acknowledges receipt, as he must, of the certified December 17, 1986 notice from the Jones' attorney (D's Ex C) which refers to previous notices. He does not "remember" seeing the earlier or subsequent correspondence, all sent to the same address, which was then and still is the corporate office used and supervised by him. (D's Ex B, pp. 32 and 33).

Neither he nor the debtor made any response to the Jones' letters nor asserted any interest in this valuable property for six months until he called on the Joneses twice shortly before June 25, 1987. He claims he then advised the Joneses of the pending bankruptcy, gave them a copy of the bankruptcy petition and some other papers, and warned them against any disposition of the property.

The Joneses acknowledge his visits, but deny that he told them the debtor had filed for bankruptcy in New York or left them any papers that gave that information. He did give them a note with the name and telephone number of his New York attorney, which they promptly turned over to their attorney. His three immediate calls to that attorney, Solomon, were never returned. The Jones' attorney verified with *this* bankruptcy court that no bankruptcy was pending. There was no reason for that attorney to suspect that this Florida corporation had filed for bankruptcy in New York.

On the crucial conflict as to whether the Joneses had actual knowledge of the debtor's bankruptcy, I believe the Joneses and disbelieve Sheehan.[1] I suspect that Sheehan, who certainly knew better, was attempting to buy and resell the debtor's assets for his personal benefit without the knowledge of his counsel or the New York court. The excuse he gives for his actions, that he was inundated by the debtor's problems, does not explain his two visits and his failure to advise his counsel and the New York court.

Sheehan is an attorney and an accountant who served at one time as a panel trustee for a Wisconsin bankruptcy court. With that background, he is strangely uninformed. For example, when asked on March 28 if the debtor has filed any plan, he did not know it had not. (*Id.* at 37). He neither replied to nor turned over the Jones' correspondence to counsel. He called on the Joneses without any identification and without a witness. He made no record even of the dates of his visits, though he says the Joneses rejected his papers and told him they intended to ignore the bankruptcy.

The Joneses, who had turned this matter over to counsel in November 1986, and had been advised by him that they had good title to the plant and a claim to the truck, immediately informed their attorney of the Sheehan's visit and relayed to him the New York attorney's name. If, as plaintiff argues, the Joneses are lying, they would not have gone to their attorney unless he, too, is lying. Plaintiff's dismissal of Fogt sug-

1. The testimony of Hodde, a friend of Solomon, is not persuasive for several reasons as argued by defendants.

gests that not even plaintiff doubts Fogt. I do not.

I find that the Joneses had neither actual knowledge of nor constructive notice of the debtor's bankruptcy until long after they had sold the truck and the cement plant.

### Discussion

Both the Joneses and their attorney have acted reasonably and appropriately in all respects. The same cannot be said of the debtor, Sheehan, or debtor's counsel.

■ The Jones' disposition of the truck and the plant were fully authorized by 11 U.S.C. § 542(c). The sales were valid and there is no contempt nor any basis for punitive damages. *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir. 1982).

■ I agree, however, with plaintiff that the concrete plant is personal property and never became a fixture attached to the leased property.[2] Though the Joneses had every plausible reason to dispose of both the truck and the plant, each of which appeared to have been abandoned, and to satisfy their claim for unpaid rent and for use and occupancy of their land, they have furnished no lawful basis to retain any more than that sum and their related legal and sales expense from the $76,000 which they received from the sales. *Fla.Stat.* § 83.08 (1987).

■ Though I believe Clifford Jones expended some time in putting both the plant and the truck in working condition prior to sale, the Jones' evidence is inadequate to form a basis for any credit to them on that account.

■ I do not share the debtor's reasoning in reaching this conclusion. The debtor relies on §§ 547, 548 and 549. This transfer was authorized under § 542(c) and, therefore, cannot be an avoidable transfer under § 549. For that same reason and because both sales occurred *after*

bankruptcy, § 547 has no application. *See* § 547(b)(4)(A). In its post-trial brief, the debtor for the first time argues the applicability of § 548. However, § 548 is no more applicable than § 547. *See* § 548(a).

Although both the truck and the plant appeared to have been abandoned, title was in the plaintiff/chapter 11 debtor-in-possession. Federal law controls and this property had not been abandoned. § 554.

The Jones' right to sell the debtor's property left on the leased premises was governed by *Fla.Stat.* § 83.08(2), which gives the landlord a lien:

"Upon all other property of the lessee or his sublessee or assigns, usually kept on the premises. This lien shall be superior to any lien acquired subsequent to the bringing of the property on the premises leased."

The lien entitled the Joneses to payment of their rent, including rent for the use and occupancy of their land after the lease expired, and for the reasonable costs of sale, including their legal expense in the enforcement of their lien. *See generally United States v. S.K.A. Assoc., Inc.*, 600 F.2d 513 (5th Cir.1979). The surplus, however, is payable to plaintiff.[3]

■ In this State, the landlord's lien is enforceable in a distress action under *Fla. Stat.* § 83.11 ff. Had the Joneses known that their plausible assumption that the concrete plant (which is at least two stories high) was not real property (it had not been moved for six years), and had they known that the debtor was in bankruptcy and, therefore, could not abandon property without court approval, I presume they would have taken that course.

The fact that they did not is reasonable under these circumstances. The parties, the evidence, and the issues are here before this court. It would make no sense to send them now to the State court for that purpose. This court will, therefore, accord the

---

**2.** Without belaboring the point, I find the debtor's brief persuasive on this question.

**3.** I have not overlooked the Jones' defense of laches. It is rejected because the injury or prej-

udice to the Joneses from plaintiff's delay is insufficient to invoke laches, even if the length of the delay is, which is at least arguable.

parties the relief each would be entitled to under State law.[4]

A hearing will be held May 10, 1988 at 10:00 a.m. in Room 329 at 701 Clematis Street, West Palm Beach, Florida, to receive evidence and fix the Jones' claim for rent and use and occupancy, their costs of sale, legal expense, and any *out-of-pocket* expense incurred in connection with the sale of the truck and the plant. The record before me is incomplete on these matters.

As is required by B.R. 9021(a), a separate judgment will be entered following the scheduled hearing.

---

**4.** I presume plaintiff will dismiss its replevin action against the Joneses filed September 9, 1987 in the County Court for Martin County involving the same property. Had this complaint not presented issues under Title 11, I would have granted defendant's motion and awaited the State court's resolution of that earlier action.