**McCARTHY BUILDING COMPANIES, f/k/a McCarthy Brothers Company, and Interface Construction Corporation, Plaintiffs/Appellants,**

v.

**CITY OF ST. LOUIS, Missouri, Defendant/Respondent.**

No. ED 79794.

Missouri Court of Appeals, Eastern District, Division Five.

April 23, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 2002.

Application for Transfer Denied Aug. 27, 2002.

Richard R. Hardcastle, III, Jackson D. Glisson, III, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for appellants.

Jeffrey B. Rosen, Ashley Ratcliffe Beumer, Polsinelli, Shalton & Welte, P.C., Kansas City, MO, Edward J. Hanlon, Deputy City Counselor, St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

This case involves a dispute over the terms of an escrow option in lieu of retainage in a construction contract. The contractors filed a lawsuit to obtain a declaratory judgment that they had a contractual right to place money or securities in escrow equal to ten percent retainage and earn interest on the funds in escrow and to obtain damages for breach of contract when the owner refused to allow the contractors to establish an escrow account on which contractors would earn interest. The trial court entered a judgment in which it dismissed the contractors' declaratory judgment count as moot and granted summary judgment in the owner's favor on the breach of contract count on the grounds that the contract did not permit the contractors to establish an escrow on which interest would be payable to the contractors. The contractors appeal the entry of summary judgment. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

We recite the uncontested facts established by the summary judgment record. In 1996, plaintiffs McCarthy Building Companies (f/k/a McCarthy Brothers Company) and Interface Construction Company formed a joint venture for the purpose of entering into a contract with defendant, the City of St. Louis (the City). In May, 1996, plaintiffs and the City entered into a written contract in which plaintiffs were to construct an expansion project of the concourse, terminal and apron sections of the east terminal at Lambert St. Louis International Airport, known as "package B" (the project). The project was directed by the City through the East Terminal Expansion Project Management Team (the project team). The deputy project team director, Mike Minges, handled most of the communications.

Section IIC of the contract contained the following provisions:

**90–06 PARTIAL PAYMENTS** ...
From the total of the amount deter-

mined to be payable on a partial payment, 10 percent of such total amount will be deducted and retained by the owner [the City] until the final payment is made, except as may be provided (at the Contractor's option) in the subsection titled PAYMENT OF WITHHELD FUNDS of this section. The balance (90 percent) of the amount payable, less all previous payments, shall be certified for payment. Should the Contractor exercise his/her option, as provided in the subsection titled PAYMENT OF WITHHELD FUNDS of this section, no such 10 percent retainage shall be deducted.

**90–08 PAYMENT OF WITHHELD FUNDS.** At the Contractor's option, he/she may request that the owner accept (in lieu of the 10 percent retainage on partial payments described in the subsection titled PARTIAL PAYMENTS of this section) the Contractor's deposits in escrow under the following conditions.

a. The Contractor shall bear all expenses of establishing and maintaining an escrow account and escrow agreement acceptable to the owner.

b. The Contractor shall deposit to and maintain in such escrow only those securities or bank certificates of deposit as are acceptable to the owner and having a value not less than the 10 percent retainage that would otherwise be withheld from partial payment.

c. The Contractor shall enter into an escrow agreement satisfactory to the owner.

d. The Contractor shall obtain the written consent of the surety to such agreement.

In a letter dated May 23, 1996, plaintiffs requested that the City establish a Retainage Escrow Account and provided the City with copies of forms from accounts that they had used on other jobs. On May 30, 1996, Mr. Minges responded that the project team felt that paragraphs 90–06 and 90–08 were only applicable to federal funds expended on the project, and that, because the retainage amount available from such funds was only $165,289, the City did not want to "go through the book work necessary to pursue this option [establishing an escrow account]."

On August 7, 1996, plaintiffs sent a partially executed escrow agreement to Mr. Minges, which was rejected. On December 30, 1996 plaintiffs sent a revised unexecuted escrow agreement to Mr. Minges for his approval. Under this revised agreement, plaintiffs would deposit securities in an escrow account in lieu of the ten percent retainage to assure performance of the contract. Alternately, the City had discretion to pay the retainage directly into the escrow account. Interest earned on the escrowed deposits would be paid to the plaintiffs. The escrow would continue until the City directed the securities to be released to plaintiffs, or, if plaintiffs failed to perform, until the City demanded payment from the sale of the securities.

By letter dated February 18, 1997, the City responded that the revised proposal appeared "to be less beneficial to the City than previous drafts" and disagreed with the term that interest accruing from the escrow account would be payable to plaintiffs. The City explained:

The issue is not the establishment of the escrow but the disposition of the very sizable amount of interest to be generated from either the securities or cash during the term of the escrow. We are not aware of any provision on the contract documents mandating the interest be paid to the Contractor. To the contrary Section 90–08(c) provides that the escrow agreement must be satisfac-

tory to the city and Section 90–08(b) provides that the securities or bank certificates must be acceptable to the City.

The draft continues to provide that the interest or earnings accruing from the escrow are payable to the Contractor. That would appear to be unacceptable.

In a letter dated April 30, 1997, plaintiffs informed the City that their position was that the contract documents allowed them to post securities or certificates of deposit in lieu of retainage and that they were entitled to interest on securities placed in an escrow to be used in lieu of retainage. In October, the City informed plaintiffs that it has been the City's position "that the interest or earnings accruing from the escrow is to be payable to the City." Plaintiffs filed a petition against the City seeking a declaratory judgment that they had a right, pursuant to the contract, to place in escrow securities, bank certificates of deposit, or other cash or securities acceptable to the City, equal to the value of the ten percent retainage, and a breach of contract claim to recover damages they incurred when the City refused to allow them to establish an escrow account on which they would be paid the interest earned on the securities placed in escrow. The City filed a motion for summary judgment and plaintiffs filed a cross-motion for summary judgment. The trial court dismissed the declaratory judgment count as moot and entered summary judgment in the City's favor on plaintiffs' breach of contract claim, concluding that the contract did not permit plaintiffs to establish an escrow account and receive interest on the funds and securities in escrow, and, as a result, plaintiffs could not establish a breach of contract. On appeal, plaintiffs challenge the trial court's entry of summary judgment.

## DISCUSSION

On appeal, plaintiffs contend that the trial court misinterpreted the contract in that the purpose of the escrow option was to allow plaintiffs to earn interest therefrom and the City's refusal to accept an escrow on which plaintiffs would earn interest was a breach of contract was unreasonable and constituted a breach of contract.

We review this appeal from summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When the underlying facts are not in question, disputes arising from the interpretation and application of contracts are matters of law for the court. *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 342 (Mo.App. 2000).

■ Section IIC, sub-section 90–06 of the contract provides that the owner may retain ten percent of the amount payable on partial payments until final payment is made. A retainage clause is designed to assure the owner of satisfactory performance and completion of the project. Mo. Construction Law Section 1.10.3 (Mo. Bar 1994, 1996, 2000). However, this clause also gives plaintiffs the option to establish an escrow, pursuant to sub-section 90–08, and thereby avoid the withholding of ten percent of the total value of the contract as retainage. Sub-section 90–08 allows the plaintiffs to elect to request the City to accept the plaintiffs' deposits in escrow of securities acceptable to the City that have a value of not less than the amount represented by the ten percent retainage. These subsections of the contract are silent on which party would receive interest or other income earned on the securities deposited in escrow.

■ The trial court held that the contract did not entitle plaintiffs to receive

interest on the escrow account. This holding was erroneous. Terms of an escrow agreement specifying how and to whom interest is to be paid are binding. *Bakewell v. Heritage Nat. Bank*, 890 S.W.2d 653, 659 (Mo.App.1994). However, if the contract is silent on who should receive interest on escrowed funds, the interest is payable to the owner of the escrowed funds. *Forest Hills Const. Co. v. City of Florissant*, 562 S.W.2d 322, 327–29 (Mo. banc 1978); 30A C.J.S. *Escrows* section 11 (1992). The escrow described in the contract contemplates the typical escrow in which the property is deposited with a third person for delivery to another only upon the occurrence of a stated condition. In this situation the party who deposits property into an escrow account is the owner of the account and retains title until performance of a condition by the other party. *Morris v. Davis*, 334 Mo. 411, 66 S.W.2d 883, 888 (1933); *Boatmen's Nat. Bank v. Dandy*, 804 S.W.2d 783, 786 (Mo. App.1990); RESTATEMENT (SECOND) CONTRACTS Section 103, cmt. b; 30A C.J.S. *Escrows* section 11 (1992).[1] Rules of law governing property delivered in escrow also apply to situations in which money is deposited in escrow. *Nash v. Normandy State Bank*, 201 S.W.2d 299, 301 (Mo. 1947). When the condition of performance is completed, ownership of the property in the escrow account immediately transfers. *Boatmen's*, 804 S.W.2d at 786; *see also Bradbury v. Smith*, 181 S.W. 415, 423 (Mo. 1915); 30A C.J.S. *Escrows* section 12 (1992).

■ In this case, one of plaintiffs' proposals was an escrow agreement in conformity with sub-section 90–08 pursuant to which plaintiff would deposit satisfactory securities in the required amount into the escrow account until the City instructed the escrow holder to release the securities to plaintiffs or, if the plaintiffs failed to perform, to pay the City from the sale of those securities. Under this proposal, plaintiffs would have been the owners of the securities in the escrow account while they were held in the account. As owners, in the absence of any contract provision to the contrary, plaintiffs were entitled to all interest or profit on the securities held in the account. The trial court erred in holding that plaintiffs were not entitled to that interest.

The next question is whether the City established that plaintiffs could not show that it breached the contract. A breach of this contract turns on the question of whether the City unreasonably withheld its consent for the proposed escrow.

■ Sub-section 90–08 requires, in order for plaintiffs to establish an escrow account, that they "enter into an escrow agreement *satisfactory to the owner.*" This is a "satisfaction" clause. *See Hall v. W.L. Brady Investments, Inc.*, 684 S.W.2d 379, 385 (Mo.App.1984).

■ This subsection of the contract does not contain any standard from which the City was to be adjudged should it be dissatisfied. "In the absence of a specific expression in the instrument or a clear indication from the nature of the subject matter, the preference of the law is for the more objective standard of the reasonable person." 13 WILLISTON ON CONTRACTS Section 38:22 (4th ed. 2000).

---

1. This rule does not apply to situations which may be labeled "escrow" but in which the owner has unconditionally divested itself of the money or property upon deposit. For example, when the money or property is unconditionally and presently owed to one of two competing claimants, but is placed "in escrow" pending resolution of which claimant is so entitled. In that situation, which is not dependent upon the performance of a condition, the depositor is divested of ownership upon deposit. *Forest Hills*, 562 S.W.2d at 329. *See also International Paper Co. v. Futhey*, 788 S.W.2d 303, 306 (Mo.App.1990).

Our courts follow this objective "reasonable person" test, as set out in RESTATEMENT (SECOND) CONTRACTS Section 228 (1979), in circumstances where the satisfaction clause involves a commercial judgment and not a personal judgment based on taste or aesthetics. *Hall*, 684 S.W.2d at 386–87. That test is:

> When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance or with respect to something else, and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied.

RESTATEMENT (SECOND) CONTRACTS Section 228. Thus, if the performance of a contract is to be to the satisfaction of the promissor, "he must exercise that judgment in good faith and as a reasonable man, not arbitrarily without a bona fide reason for his dissatisfaction." *Hickham v. Chronister*, 792 S.W.2d 631, 633 (Mo. App.1989).

■ The City's rejection of plaintiffs' escrow proposal as unsatisfactory must be considered under the "reasonable person" standard. It was the trial court's duty to decide whether the City's rejection of the escrow proposal was reasonable and in good faith. *See Campbell v. Shaw*, 947 S.W.2d 128, 131 (Mo.App.1997). Under the circumstances of this case, in which the City rejected a proposed escrow agreement which conformed to Sub-section 90–08 on the ground that it allowed interest to be paid to plaintiffs, the trial court could

not find the rejection reasonable because plaintiffs had a right to that interest. The City did not establish as a matter of law that plaintiffs could not show a breach of contract and therefore did not establish a right to summary judgment.

■ The judgment of the trial court is reversed and remanded.[2]

JAMES R. DOWD, Chief Judge and RICHARD B. TEITELMAN, Special Judge, concur.

---

2. The parties in this case each sought relief under the contract on summary judgment but only filed with the trial court copies of the clauses in dispute. The complete copy of the contract was never filed with the trial court. We presume, for purposes of this appeal, that the other provisions in the contract did not affect the clauses under consideration, that Missouri law applies, and that the escrowed or retained amounts were to be paid to the contractors upon completion. However, we direct any party who seeks relief after remand to file a copy of the entire contract in the trial court to ensure that any future judgment is based upon a consideration of the whole contract.