In re G & G INVESTMENTS, INC., Debtor.

Robert Shearer, Chapter 7 Trustee, Plaintiff,

v.

Petra Buschmeier, Defendant.

Bankruptcy No. 07–27811–BM.
Adversary No. 09–2518–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 27, 2011.

Robert O. Lampl, Woodland Hills, CA, for the Chapter 7 Trustee.

Ronald B. Roteman, Pittsburgh, PA, for Petra Buschmeier.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Robert Shearer, the Chapter 7 Trustee for the above-captioned debtor (hereafter "the Trustee"), brings the instant adversary action to avoid as preferential under 11 U.S.C. § 547(b) two discrete transfers of money from the United States District Court, W.D. Pa. (hereafter "the District Court"), to Petra Buschmeier, the instant defendant (hereafter "Buschmeier"). Such money had previously been paid into the District Court's Registry by and/or on behalf of the instant debtor (hereafter "the Debtor"), to be held in escrow therein by the District Court Clerk pending the resolution of a dispute as to whether such money should be paid to Buschmeier or instead, in part, to satisfy certain of the Debtor's counsel fees.

The parties have stipulated to the facts that will govern the adjudication of the instant adversary proceeding. Both parties have also filed summary judgment motions with respect to the instant matter, with each motion accompanied by a brief in support of such motion. After considering both summary judgment motions, as well as the other documents submitted regarding the same, and for the reasons that are set forth below, the Court (a) holds that none of the money in question that Buschmeier received from the District Court constitutes a preferential transfer, and (b) consequently grants Buschmeier's summary judgment motion and denies that of the Trustee.

## STATEMENT OF FACTS

Buschmeier obtained a final judgment against the Debtor in an amount approxi-

mating $57 million on July 14, 2003 (hereafter "the Final Judgment"). On September 8, 2003, Buschmeier commenced a separate action in the District Court, wherein she sought to enforce the Final Judgment. On November 18, 2003, the District Court granted Buschmeier's Motion for Supplementary Relief in Aid of Execution. In its order granting such relief on November 18, 2003, the District Court enjoined the Debtor from conveying away any of its property, and directed the Debtor to preserve such property for, and disclose the particulars regarding the same to, Buschmeier.

Among such property of the Debtor was a claim that it had filed in the Canadian bankruptcy proceeding of Consumers Packaging, Inc. (hereafter "CPI"). On November 26, 2003, the District Court authorized the realization of a settlement fund from the CPI bankruptcy for the purpose of ultimately benefitting Buschmeier. On July 19, 2004, the Debtor received an initial distribution from the CPI bankruptcy. By order dated October 6, 2005, the District Court directed the Debtor to forward such initial distribution on to Buschmeier.

On February 6, 2006, the Debtor disclosed that it had received a second distribution of $80,339.24 from the CPI bankruptcy (hereafter "the Second CPI Payment"). On February 7, 2006, the Debtor moved the District Court for an order that would require the Debtor to deposit the Second CPI Payment into escrow pending the resolution of the Debtor's appeal of the District Court's prior denial of a request that some of the money that the Debtor would realize from CPI bankruptcy distributions be utilized to pay counsel fees of the Debtor. On February 8, 2006, Buschmeier moved for an immediate turnover of the Second CPI Payment to her. By orders dated April 13, 2006, and May 3, 2006, the District Court ultimately resolved the foregoing motions by directing that the Debtor deposit the Second CPI Payment, plus all accrued interest, into the District Court's Registry, to be held in escrow therein by the District Court Clerk pending the resolution of a dispute as to whether such money should be paid to Buschmeier or instead, in part, to the Debtor's counsel at that time (hereafter "the Debtor's Counsel") to satisfy certain of such counsel's fees.

On April 20, 2006, the Debtor disclosed that two of its subsidiaries, Hillsboro Glass Company (hereafter "Hillsboro") and GCA Aviation, Inc. (hereafter "GCA"), had received distributions from the CPI bankruptcy (hereafter "the CPI Subsidiary Payments"). By orders, one dated May 25, 2006, and two dated July 7, 2006, the District Court directed that the Debtor deposit the CPI Subsidiary Payments into the District Court's Registry, to be held in escrow therein by the District Court Clerk pending the resolution of the same dispute for which the Second CPI Payment was similarly held, namely whether such money should be paid to Buschmeier or instead, in part, to the Debtor's Counsel to satisfy certain of such counsel's fees. The amount of the CPI Subsidiary Payments so deposited into the District Court's Registry on behalf of (a) Hillsboro equalled $90,196.98 (hereafter "the Hillsboro CPI Payment"), and (b) GCA equalled $5,436.06 (hereafter "the GCA CPI Payment").

On February 22, 2007, Buschmeier moved the District Court to release to her all three of the escrow accounts that had been established in the District Court's Registry—i.e., the amounts deposited therein for both the Second CPI Payment and the two CPI Subsidiary Payments. By two separate orders dated December 11, 2007, the District Court (a) granted

such motion with respect to the Second CPI Payment and the GCA CPI Payment, and (b) thus directed the District Court Clerk to issue checks to Buschmeier so as to release to her the escrowed funds that pertained to such payments. By order, also dated December 11, 2007, the District Court denied such motion "without prejudice at this time" regarding the Hillsboro CPI Payment. In response to the December 11, 2007 orders, the District Court Clerk sent two cashier's checks to Buschmeier. The first check was dated January 17, 2008, was for $84,064.57, and represented the release of escrowed funds that pertained to the Second CPI Payment. The second check was dated January 18, 2008, was for $5,542.38, and represented the release of escrowed funds that pertained to the GCA CPI Payment.

On December 11, 2007, the Debtor commenced the instant Chapter 7 bankruptcy case. On September 14, 2009, the Trustee commenced the instant preference action.

### DISCUSSION

The Trustee contends that the District Court's transfers of the two cashier's checks to Buschmeier in January 2008 (hereafter "the Cashiers Checks") constitute preferences.

11 U.S.C. § 547(b) provides, in pertinent part, that:

the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 2011).

### I. *Whether the District Court's transfers of the Cashiers Checks can be avoided as preferences under § 547(b)?*

■ As an initial matter, the Court notes that the Trustee pursues as preferential the District Court's transfers of the Cashiers Checks in January 2008 even though such transfers necessarily occurred post-petition, that is subsequent to December 11, 2007, which is when the Debtor commenced the instant Chapter 7 bankruptcy case. Buschmeier immediately responds by arguing that (a) post-petition transfers, as a matter of law, cannot be avoided under § 547(b) as preferences, and (b) the District Court's transfers of the Cashiers Checks in January 2008 consequently cannot be so avoided. Buschmeier argues that post-petition transfers cannot be avoided as preferential because post-petition transfers necessarily cannot occur on or within 90 days before the date of the filing of a bankruptcy petition and so, consequently, cannot satisfy § 547(b)(4)(A).

The Court agrees with the entirety of the foregoing position of Buschmeier. *See In re Ford Concepts, Inc.,* 85 B.R. 893, 897 (Bankr.S.D.Fla.1988) (relying on

§ 547(b)(4)(A) when holding that, because the transfer at issue therein "occurred *after* bankruptcy, § 547 has no application"); *In re Sims Office Supply, Inc.,* 94 B.R. 744, 747 (Bankr.M.D.Fla.1988) (holding that the transfer at issue therein was a post-petition transfer that "is avoidable pursuant to Title 11 U.S.C. § 549, rather than pursuant to Title 11 U.S.C. § 547"); D. Epstein, S. Nickles & J. White, *Bankruptcy Practitioner Treatise Series* § 6–11 at 540 n. 6 (West 1992) ("A transfer that occurs ... subsequent to the bankruptcy petition[ ] is immune from attack as a preference, ... but is nevertheless vulnerable under section 549 which governs the validity of postpetition transfers"). Therefore, the Court must hold that the District Court's transfers of the Cashiers Checks in January 2008 cannot be avoided as preferences under § 547(b).

## II. *Whether the District Court's transfers of the Cashiers Checks can be avoided as post-petition transfers under § 549?*

Because the Trustee has pled nothing more than a preference action regarding the District Court's transfers of the Cashiers Checks in January 2008, the Court could end its analysis at this point. However, the Court chooses to proceed further given that the authorities relied upon by the Court to support its decision that the preference action pled by the Trustee fails raise the issue of whether the District Court's transfers of the Cashiers Checks in January 2008 can be avoided as post-petition transfers pursuant to 11 U.S.C. § 549.

■ The Court holds that the Trustee could not now pursue the avoidance of the District Court's transfers of the Cashiers Checks in January 2008 under § 549 because (a) a two-year statute of limitations dating from the time of such transfers would apply to such an action under § 549, *see* 11 U.S.C.A. § 549(d)(1) (West 2011), (b) such two-year statute of limitations passed in January 2010, (c) the Trustee has neither formally pled in his complaint, nor implicitly raised in any of his papers, the issue of such an action under § 549, (d) the Court, by virtue of the instant decision, enters a final judgment that resolves the instant action, and (e) the entry of the instant final judgment would preclude any subsequent amendment by the Trustee of his adversary complaint.

■ The Court also holds, in any event, that such an action under § 549 would be fruitless (a) because, for the reasons set forth below, the money that was transferred to Buschmeier by way of the Cashiers Checks would ultimately have to be paid to her even were the District Court's transfers of such checks in January 2008 to be avoided under § 549, (b) because such an avoidance of such transfers thus would ultimately not benefit the instant bankruptcy estate, and (c) since the Court cannot, or at least will not, order the avoidance of transfers when to do so would not be of any benefit to the instant bankruptcy estate, *see In re Three Partners, Inc.,* 199 B.R. 230, 237–38 (Bankr.D.Mass.1995); 5 *Collier on Bankruptcy,* ¶ 549.04[5] at 549–12 to 13 (Bender 2010).

■ The Court holds that Buschmeier would ultimately have to be paid the money that she received by way of the Cashiers Checks even were the transfers of such checks to her to be avoided under § 549 because, subsequent to such avoidance, the District Court decisions that were rendered on December 11, 2007, would still remain, which decisions ordered that the money in question be released to Buschmeier. Such decisions (hereafter "the District Court Decisions") essentially

operated to vest in Buschmeier complete ownership of such money.[1]

### III. Whether the District Court Decisions could be avoided as preferences under § 547(b)?

■ The Court recognizes that the District Court Decisions were rendered on the same date when, but presumably just before, the Debtor filed for bankruptcy. However, the District Court Decisions also could not now be avoided by the Trustee as preferences under § 547(b) even if they were preferential for the same reason that the Trustee cannot now pursue transfer avoidance under § 549. More particularly, the Trustee could not now pursue such a preference avoidance action because (a) of the passage on December 11, 2009, of the relevant statute of limitations, which, for an action under § 547 in the instant bankruptcy case, is that contained in 11 U.S.C. § 546(a)(1)(A), (b) the Trustee has neither formally pled in his complaint, nor implicitly raised in any of his papers, the issue of such a preference action, (c) the Court, by virtue of the instant decision, enters a final

judgment that resolves the instant action, and (d) the entry of the instant final judgment would preclude any subsequent amendment by the Trustee of his adversary complaint.

The Court holds as well that, even if the Trustee were able to pursue a preference action regarding the entry of the District Court Decisions, such decisions could not, in any event, be avoided as preferences under § 547(b).[2] The Court so rules for several reasons.

### A. Whether the Debtor held an interest in the Escrowed Funds?

■ As a threshold matter, in order for the District Court Decisions to be preferential—and, for that matter, in order for the January 2008 transfers of the Cashiers Checks to have been preferential had they occurred within 90 days before the Debtor's bankruptcy petition filing—the Debtor would need to have held, immediately prior to the entry of the District Court Decisions on December 11, 2007, an interest in the

---

1. The Trustee also contends that the automatic stay imposed by 11 U.S.C. § 362(a) was violated by the District Court's transfers of the Cashiers Checks to Buschmeier in January 2008. Such is not the case, however, because, as just set forth in the text immediately preceding the instant footnote, the District Court Decisions essentially operated to vest in Buschmeier complete ownership of the escrowed funds that were so transferred to her. Consequently, Buschmeier owned such funds outright at that time, which point in time was prior to their submission to her via the Cashiers Checks. In fact, because the District Court Decisions were rendered on the same date when, but presumably just before, the Debtor filed for bankruptcy, Buschmeier owned such funds outright pre-petition. Since she owned such funds outright pre-petition, they constituted property of neither the instant bankruptcy estate nor the Debtor when they were subsequently paid to Buschmeier via the Cashiers Checks. Therefore, the District Court's transfers of the Cashiers

Checks to Buschmeier in January 2008 could not have operated to violate the automatic stay imposed in the instant case.

As an aside, that Buschmeier owned the escrowed funds outright pre-petition operates to insulate such funds from any future turnover action by the Trustee under 11 U.S.C. § 542.

2. As an aside, the Court notes that, even if the Trustee somehow could successfully avoid the entry of the District Court Decisions as preferential under § 547(b), he would still somehow also need to avoid the District Court's transfers of the Cashiers Checks in January 2008 via § 549 before he could recover the escrowed funds that were transferred to Buschmeier via such checks. *See In re Closson,* 100 B.R. 345, 347–48 (Bankr.S.D.Ohio 1989) (avoiding pre-petition lien does not establish—i.e., automatically create—the right to avoid post-petition payments made on the basis of such avoided lien).

money that the District Court thereby ordered to be released to Buschmeier by way of the Cashiers Checks. Such money, of course, is the money that resided in escrow in the District Court's Registry and which pertained, in particular, to the Second CPI Payment and the GCA CPI Payment (hereafter "the Escrowed Funds"). The Court, for several reasons, holds that, as of December 11, 2007, immediately prior to when such funds were ordered by the District Court to be released to Buschmeier, the Debtor did not hold an interest in the Escrowed Funds, at least such an interest that would be sufficient to support a preference action regarding the District Court Decisions.

■ First, as a matter of law, the type of interest in property that a debtor would need to hold prior to its transfer so as to support such a preference action is more than bare legal title in property. *See In re O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 667–68 (Bankr.S.D.N.Y.1985). Such makes eminent sense (a) because, if bare legal title in property is all that is transferred pre-petition, then, pursuant to 11 U.S.C. § 550(a), only such legal title or its value could potentially be recovered for the benefit of creditors if such transfer would be avoided under § 547(b), *see* 11 U.S.C.A. § 550(a) (West 2011), and (b) since bare legal title in property is worthless to a creditor body, *see O.P.M. Leasing*, 46 B.R. at 667–68.[3]

■■ Second, the Court holds that, according to the law regarding escrows generally in Pennsylvania, the Debtor would be deemed to have held legal title to the Escrowed Funds up until December 11, 2007, when the District Court Decisions were rendered. *See* 13 P.L.E.2d *Contracts* § 603 at 140 (Bender 2010) ("Although, under the usual escrow agreement, the depositor loses control of the instrument or money placed in escrow, he or she retains legal title thereto until performance of the condition or the happening of the specific event upon which delivery is to be made by the depositary"); *In re Mason*, 1999 WL 60145 at *3 (Bankr.E.D.Pa. 1999) (same). However, and unfortunately for the Trustee, the law in Pennsylvania, as it is generally elsewhere, is that a depositor does not retain the beneficial interest in—i.e., equitable title to—property once it is placed in escrow. *See Mason*, 1999 WL 60145 at *4. Therefore, the Debtor did not retain the beneficial interest in the Second CPI Payment and the GCA CPI Payment after they were paid into the District Court's Registry and, thus, became the Escrowed Funds. Consequently, the Debtor did not hold an interest in the Escrowed Funds as of December 11, 2007, that would be sufficient to support a preference action regarding the District Court Decisions. The Court holds as it does notwithstanding, as the Trustee points out, that at no time prior to December 11, 2007, had the District Court yet determined, as between Buschmeier and the Debtor's Counsel, to whom the Escrowed Funds should be paid. That the District Court had not, prior to December 11, 2007, determined that Buschmeier, in particular, should receive such funds does not change the fact that the Debtor gave up the beneficial interest in such funds more than 1½

---

**3.** The *O.P.M. Leasing* court, and the court in *Carlson v. Farmers Home Administration*, 744 F.2d 621 (8th Cir.1984), upon which the *O.P.M. Leasing* court relied when rendering its decision, held, moreover, that a debtor's retention of bare legal title to property, even when coupled with a contingent reversionary interest in equitable title to (i.e., the beneficial interest in) such property, is insufficient to support a preference action under § 547(b) because such interests in such property would be of no value to such debtor's bankruptcy estate. *See O.P.M. Leasing*, 46 B.R. at 668 (also quoting *Newcomb*, 744 F.2d at 627).

years earlier upon depositing them into the District Court's Registry. During such 1½–year period, Buschmeier and the Debtor's Counsel held contingent beneficial interests in the Escrowed Funds, which contingent interest of Buschmeier ultimately became fixed on December 11, 2007, by virtue of the District Court Decisions.

■■■ Third, the Court holds that, because the Debtor unconditionally deposited the Second CPI Payment and the GCA CPI Payment into the District Court's Registry to then ultimately be paid to either Buschmeier or the Debtor's Counsel, that is because the Debtor made such deposit without any chance in the future for recapturing such funds, the Debtor divested itself of ownership of both the legal title and the equitable interest in such funds upon their deposit into the District Court's Registry. The Court so rules notwithstanding that Pennsylvania escrow law regarding the ownership of funds that have been unconditionally escrowed is nonexistent because the Court predicts that the Pennsylvania Supreme Court, if faced with a similar fact pattern, would rule in a similar fashion. The Court predicts as it does because (a) such a holding makes eminent sense, and (b) such statement of the law is consistent with that in at least one other jurisdiction in this country, *see McCarthy Building Companies v. City of St. Louis,* 81 S.W.3d 139, 144 n. 1 (Mo.Ct. App.2002).[4]

Finally, case authority exists for the proposition that the placement of property *in custodia legis* divests those who would otherwise own such property of legal title thereto. *See Davis v. Cox,* 356 F.3d 76, 94 (1st Cir.2004). Because the Escrowed Funds were held in the District Court's Registry, such funds were *in custodia legis* prior to the entry of the District Court Decisions on December 11, 2007. Therefore, on that basis as well, the Debtor arguably became dispossessed of legal title to such funds 1½ years prior to December 11, 2007.

For all of the foregoing reasons, the Court holds that, as of December 11, 2007, the Debtor did not hold an interest in the Escrowed Funds, at least such an interest that would be sufficient to support a preference action regarding the District Court Decisions. For this reason alone, the District Court Decisions themselves are not preferential such that they could be avoided pursuant to § 547(b).

### B. *11 U.S.C. § 547(b)(5) and a such a preference action.*

■■■ In order for the Trustee to satisfy § 547(b)(5) with respect to a preference action regarding the District Court Decisions, the Trustee would need to successfully demonstrate that, by virtue of the entry of such decisions, Buschmeier received more than she would have had such decisions not been entered and she instead received a distribution through a Chapter 7 liquidation. The Court holds that the Trustee could not so satisfy § 547(b)(5) because, even if the District Court Decisions had not been entered pre-petition, Buschmeier still would have received the

---

4. The *McCarthy Building* court held, in particular, that the general rule regarding escrows that a depositor retains legal title to property upon its deposit into escrow

> does not apply to situations which may be labeled 'escrow' but in which the owner has unconditionally divested itself of the money or property upon deposit. For example, when the money or property is uncondition-

ally and presently owed to one of two competing claimants, but is placed 'in escrow' pending resolution of which claimant is so entitled. In that situation, which is not dependent upon the performance of a condition, the depositor is divested of ownership upon deposit.

*McCarthy Building,* 81 S.W.3d at 144 n. 1.

entirety of the Escrowed Funds during the course of a Chapter 7 liquidation.

The Court holds as it does because, if the District Court Decisions had not been entered pre-petition, then (a) the Escrowed Funds would have initially remained in escrow, and *in custodia legis* as well, in the District Court's Registry awaiting a decision by the District Court as to whom such funds should be paid, (b) the instant bankruptcy case would have intervened but the escrow arrangement within the District Court's Registry could not have been invalidated by virtue of such bankruptcy, and (c) such funds, because they would have remained in the District Court's Registry throughout and subsequent to such bankruptcy, would have ultimately been paid by the District Court to Buschmeier since there would be no reason why the instant bankruptcy would otherwise affect the substance of the District Court Decisions. *See In re Aspen Data Graphics, Inc.,* 109 B.R. 677, 682 (Bankr. E.D.Pa.1990) (holding in a similar fashion with respect to a similar factual scenario).

▉▉▉ The Trustee maintains that, if the District Court Decisions had not been entered, the Escrowed Funds had not then been transferred to Buschmeier, and Buschmeier had then only received what she would have gotten by way of a Chapter 7 liquidation, then the Internal Revenue Service instead would have received a priority distribution in bankruptcy of all of the Escrowed Funds, ultimately leaving noth-

ing for Buschmeier to receive. However, such would have been the case only if a vehicle exists in bankruptcy whereby the Trustee could have invalidated the escrow arrangement within the District Court's Registry. Unfortunately for the Trustee, no such bankruptcy vehicle exists. The Court so holds because (a) the creation of such escrow arrangement could not have been avoided as preferential since such creation occurred 1½ years prior to December 11, 2007, and thus outside of the 90–day preference period, (b) the *in custodia legis* nature of the escrow arrangement within the District Court's Registry renders such escrow arrangement immune from an attack via the Trustee's strong arm powers under 11 U.S.C. § 544(a), *see Davis,* 356 F.3d at 93 n. 16; *Aspen Data,* 109 B.R. at 682; *In re Verner,* 318 B.R. 778, 791 (Bankr.W.D.Pa.2005); *In re Ebel,* 144 B.R. 510, 515–16 (D.Colo.1992),[5] and (c) it cannot conceive of any other bankruptcy avoidance measure that could be used to invalidate such escrow arrangement.

Therefore, the Trustee could not satisfy § 547(b)(5) with respect to a preference action regarding the District Court Decisions, which means that such decisions could not be avoided as preferences pursuant to § 547(b).

## C. *The timing of the transfer of the Escrowed Funds.*

▉▉▉ Finally, substantial case authority exists for the legal proposition that "the

---

**5.** The Trustee argues that the escrow of the Escrowed Funds within the District Court's Registry constitutes a secret lien, and presumably that such secret lien would succumb to the Trustee's strong arm powers under § 544(a). The case authorities cited in the text above immediately preceding the instant footnote hold contrarily. Moreover, the Court notes that at least one of the grounds, no doubt, for such case authority is that (a) the Trustee's strong arm powers are subject to any constructive notice that he has, *see In re*

*Mitchell,* 80 B.R. 350, 352 (Bankr.W.D.Pa. 1987), (b) "[o]pen possession of property may constitute constructive notice," 5 *Collier on Bankruptcy,* ¶ 544.02[2] at 544–8, and (c) the placement of property *in custodia legis,* in particular, imputes constructive notice to the Trustee, *see In re Richards,* 275 B.R. 586, 591 (Bankr.D.Colo.2002); *Ebel,* 144 B.R. at 515–16. Therefore, the escrow of the Escrowed Funds within the District Court's Registry did not constitute a *secret* lien.

escrow cases are uniform in holding that it is the debtor's *deposit* of funds into escrow and not the award of judgment or subsequent release of the funds that is the controlling transfer for preference purposes." *In re Coco,* 67 B.R. 365, 369 (Bankr.S.D.N.Y.1986); *see also Aspen Data,* 109 B.R. at 682–83 (same, citing as support not only the decision in *Coco* but also those in *O.P.M. Leasing* and *Newcomb,* as well as 11 U.S.C. § 547(e)(1)(B)).

This Court adopts such legal proposition and, in reliance thereon, holds that the controlling transfers for preference purposes in the instant matter occurred between April 2006 and July 2006, which is when the Debtor deposited the Second CPI Payment and the GCA CPI Payment into escrow within the District Court's Registry. Because such transfers occurred approximately 1½ years prior to December 11, 2007, when the Debtor filed for bankruptcy, such transfers necessarily occurred outside of the 90–day preference period. Such fact means that the Trustee cannot satisfy § 547(b)(4)(A), in particular, with respect to either such escrow deposits or the District Court Decisions and the District Court's transfers of the Cashiers Checks in January 2008.

Therefore, the escrow deposits between April 2006 and July 2006, the District Court Decisions that were entered on December 11, 2007, and the District Court's transfers of the Cashiers Checks in January 2008 are all insulated from avoidance as preferences under § 547(b).

## CONCLUSION

For all of the foregoing reasons, the Trustee's instant preference action fails as a matter of law. Consequently, the Court shall grant Buschmeier's summary judgment motion and deny that of the Trustee.

### ORDER OF COURT

**AND NOW,** this **27th day of September, 2011,** for the reasons set forth in the accompanying Memorandum Opinion of the same date; it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

(a) the motion for summary judgment filed by Petra Buschmeier, the instant defendant, is **GRANTED;** and

(b) the motion for summary judgment filed by Robert Shearer, the instant Chapter 7 Trustee and plaintiff, is **DENIED WITH PREJUDICE.**